## Rose *versus* Jessup.

1. A testator devised all his real and personal estate to trustees, first to pay his debts, and, secondly, the remaining part of his property to be divided as if he had died intestate. Until his children should arrive at the age of twenty-one years, the amount of each child's share was to be invested by the trustees for its benefit. At the time of his death, a large portion of his estate consisted of lands which he had contracted in writing to sell, but for which the purchase-money was not paid. Some of said lands were afterwards recovered or resumed by the trustees, and resold by them at less than the amounts due under the contracts; and other of said lands remained unsold.

In a codicil he directed his estate to be divided into parts according to the number of his children, and that each of his sons receive two parts, and each of his daughters one part, the children not to be obliged to hold separately, but they or their mother might hold jointly.

In a *fourth* codicil he directed that a part of his estate, known as "The Reservation," should remain for one generation at least in his family, and form a home for such of his children as wished to reside on it; and, at the desire of his wife, he gave it to his sons, with the condition that it be not sold during their lives or the lives of their sisters; the latter to be entitled when they chose to reside on it, and to be entertained by their brothers.

It was *held*, 1st, That the widow was entitled to one third part of the real estate during life, and to one third part of the personal estate absolutely; 2dly, That the amount due on the lands agreed to be sold by the testator was *personal* estate; and, on his death, the widow's interest became immediately vested: also, that if any of the lands agreed to be sold were received back by the trustees, they were bound to account for them as a substitute for the money, which was subject to the same trusts.

2. As to "The Reservation," it was *held*, that the sons were entitled to it in fee, in addition to the shares previously granted to them; the same, however, to be subject to the charges upon it and restriction as to alienation stated in the codicil.

[Rose v. Jessup.]

3. *Held*, that the widow was entitled to the undivided third part of "The Reservation," during her life.

4. The *rest* of the estate declared to be vested in the trustees, in trust that the same, or the money or property arising therefrom, be divided in such way that the widow have one-third of the real estate during her life, and one-third of the personal estate absolutely; and that the residue of the real and personal estate be divided to and among the children of the said testator, in such way that each son shall have two shares, and each daughter one share, to hold severally to them, their heirs and assigns.

.APPEAL from the decree of the Common Pleas of *Susquehanna county*.

This was an appeal by Mrs. Rose and others from the decree of the Court aforesaid, made in a proceeding in equity instituted by Edward W. Rose, Andrew H. Rose, and Robert H. Rose by his next friend Edward W. Rose, against William Jessup and Robert J. Niven, trustees under the will of Robert H. Rose, deceased, Jane Rose, widow of Robert H. Rose, deceased, Ann, who intermarried with William Maine, Ellen Rose, Caroline, who intermarried with Francis D. Ladd, and Emily Rose, daughters of said Robert H. Rose, deceased.

The plaintiffs in the bill or proceeding were sons of Robert H. Rose, deceased, who died on the 24th day of February, 1842. On the 24th day of January, 1829, the said Robert H. Rose, by his last will and testament, devised all his real and personal estate to John L. Hodge and Andrew Bayard, as trustees, and directed, 1st. That they pay all his debts.

2d. That after the payment of his debts "the remaining part of his property should be divided in the manner prescribed by the Acts of Assembly, of the state of Pennsylvania, in the cases of those persons who die without having made a will."

Until the children should arrive at the age of twenty-one years, the amount of each child's share was to be invested by the trustees for their benefit.

On the 13th January, 1830, the said Robert H. Rose added the following codicil to his will, to wit:

"Having reflected on the provisions of my will as within set forth, I think it necessary to provide for the additional expense which necessarily must arise from the situation in which my sons are likely to be placed, and therefore think it proper to add this statement: That it is my will that my estate shall be divided into certain parts according to the number of my children, and of the parts necessary for the purpose, and that of such parts each of my sons shall receive two and each of my daughters one part of said estate, to be regulated and apportioned by the within-named executors or their successors.

"R. H. ROSE." [L. S.]

[Rose *v.* Jessup.]

"Note.—The above and foregoing is not intended to oblige my children to hold separately, but they and their mother, if it should be preferred, may hold their interest jointly.

"R. H. ROSE."

"As Andrew Bayard, named in the foregoing instrument, is dead, I appoint Andrew Hodge to act as trustee in his place.

"R. H. ROSE.

"22d January, 1838."

On the 5th January, 1841, the said R. H. Rose made a further codicil, as follows :

"It appears to me desirable that the estate known as "The Reservation' should remain for one generation at least in the family that first settled it, and form a home for such of my children as may wish to reside on it; therefore, at the desire of their mother, I give it to the boys, with the condition that it be not sold during their lives or the lives of their *sisters*. And that during the lives of their sisters, they (the sisters) shall be entitled whenever they choose to reside on it, to be entertained liberally and free of all expense to them by their brothers, hoping that as there has been great affection between all the members of my family, such affection may continue unabated throughout their lives.       R. H. ROSE."   [L. S.]

"The Reservation" consisted of about 4000 acres, and upon it the family mansion (since consumed by fire and not rebuilt) was situated. Mrs. Jane Rose, the widow, elected to take under the will.

The debts of the testator were paid after his death.

William Jessup and Robert J. Niven were duly appointed trustees under the will, and William Jessup was the attorney in fact of J. L. Hodge, the executor of the will.

At the time of the death of the testator, a large portion of the estate consisted of lands which had been sold by contract to various settlers thereon. Some of the settlers, prior to his death, and others, since that time, left the lands contracted for by them, and are insolvent. Some of these lands were resold by the trustees at a less price than the amount due under their respective contracts, and others are uncultivated and remain unsold.

The contracts between R. H. Rose and the purchasers generally, were to the effect, that on condition that (the purchaser) pay to R. H. Rose (a sum stated), the interest and one-tenth of the principal, to be paid each year till the whole be paid, the purchaser was to be entitled to the land described. The contracts were signed by the parties.

The questions raised by the bill and answer upon the foregoing facts were,

[Rose *v.* Jessup.]

1st. Are the above stated contracts real or personal estate ? If real, what interest has Mrs. Rose therein ?

2d. Is "The Reservation" to form a part of the whole estate, and be valued as so much of the share belonging to the sons, or is it a specific devise, and not to be considered in dividing the estate ?

3d. What interest, if any, has Mrs. Rose, the widow, in the reservation ?

The Court below decreed,

1st. That the widow had no interest in the contracts before referred to as personal estate, but only a life interest in one-third of the same as real estate.

2d. That the reservation formed no part of the principal estate, and was not to be taken into account by the trustees in making a division under the will, and that Mrs. Rose had no interest therein.

From this decree Mrs. Jane Rose and the daughters and the trustees (*pro forma*) appeal.

*Mallery* and *H. Wright*, for appellants.—That the proceeds of the land contracted to be sold, were to be treated as *personal* estate, reference was made to 1 *W. & Ser.* 160; 3 *Barr* 377; 7 *Watts* 143.

*H. B. Wright* and *Richards*, for appellees.

The opinion of the Court, filed October 27, 1852, was delivered by

LOWRIE, J.—This bill and answer raise the question as to the whole right of the beneficial devisees under this will; and it is not for us to raise doubts about the form of the remedy for all the purposes in the view of all the parties; especially when it may settle in one action a family difficulty, which might otherwise grow into a most unhappy dispute.

Robert H. Rose devised all his property to trustees, to be divided in the same manner as if he had died intestate, with some exceptions hereafter to be noticed.

It is plain that under this devise the widow is entitled to one-third of the personal estate absolutely, and one-third of the real estate for life. It is equally plain that where the testator had sold real estate by valid agreements, the sums due thereon were part of his personal estate, and that on his death his widow's interest therein became immediately vested. It follows, that the trustees were bound so to administer this portion of the estate that her interest should not be affected by any act or omission of theirs. It was their duty to proceed on the agreements and collect the money for those having a right to claim it. If such pursuit

should result in recovering back the land, then they were bound to account for that as a substitute for the money and subject to the same trusts. If they cancelled any of the sales, they are bound to account to the widow for her share of what could have been made out of them by a reasonable pursuit of the appropriate remedies. These results are too plainly consequential to be rendered doubtful by any refined reasoning from the analogy of cases. The interests which the plaintiffs, the sons, take under the *fourth* codicil is not so plain. The second and third codicils require no notice; and the will and first codicil may be thus abridged: I give all my estate to my trustees, who may appoint their own successors, and shall sell such parts of my land as they shall think proper, and distribute all my effects in the same manner as if I had died otherwise intestate, except that each of my sons shall have two shares and each daughter one share.

We slightly vary the aspect, but not the sense of the *fourth* codicil when we state it thus: My family were the first to settle the place called "The Reservation," and *I* wish *it to* remain a home for them for at least one generation, and, at the desire of my wife, I provide thus for this object: I give it to my sons with the condition that it be not sold during the life of any of my children; and my daughters, when they shall choose to reside on it, shall be liberally and freely entertained by their brothers.

The first question under this fourth codicil is, do the sons take the estate, thereby devised, in addition to the shares previously granted? This codicil professes to change what had been previously done, and therefore our duty is to ascertain the extent of the change, not to reconcile the parts intended to be discordant. It is a devise directly to the sons, and therefore, to the extent of the estate granted, it is taken entirely out of the estate granted to the trustees for distribution according to the previous provisions. The rest of the estate is left to be divided as before directed. This is separated and given to the sons, and not a word is written to change the disposition. The conclusion is a necessary one, that the question just stated must be answered in the affirmative.

The next question is, what quantity of estate in the reservation is granted to the sons by the fourth codicil?

Our Act of Assembly dispenses with words of inheritance in a devise of a fee, and we are therefore allowed to seek the intention untrammelled by the old rules on this subject. The devising clause is plain, "I give it to the boys," and standing alone it would convey a fee. His purpose in devising it, that it might remain "for one generation at least," indicates that he had in his mind that it might remain more; and the limitation of the power of sale during the life of any of the sisters proves that the estate was not limited to the lives of the boys. Then it is without any fixed limit. The

[Ross *v.* Jessup.]

insertion of the "condition" limiting the right to sell seems to indicate that the testator had in his mind the idea that, without it, the sons would have power to sell, and of course, a fee simple. But it is argued that this is a limitation of the power of the trustees; yet there is nothing to show it. The limitation of the right of sale is directly connected with the devising words, and can be properly understood only as a restriction of the grant, a restriction that necessarily implies a fee simple, subject only to the specified limitation. Indeed the learned counsel of the defendants treat it as a fee simple when they argue that it is. to be taken as a satisfaction *pro tanto* of the sons' shares under the former devise. This is not itself an argument for this construction; but it is always fair to doubt any view which the counsel cannot see clearly or present consistently. The only matters that raise any doubt on this subject are, the very great change which the codicil, so construed, indicates in the testator's mind, and the apparent inadequacy of the motive for it. But when we find the change of intention expressed, we must believe that it existed; and it is impossible for us to measure the effects which given motives might produce on the testator's mind. We must consider this as a devise of a fee simple, subject to the charges and restriction upon alienation set out in the codicil.

The only remaining question is, does the widow retain in "The Reservation" the same interest which she would have had if the fourth codicil had not been written?

We think that she does. There is no incompatibility between the two estates. The former part of the will expressly devises to her one-third of the real estate for life, when it devises to her the share she would take without any will; and we must carry this intention in our mind when we come to consider the codicils. In the first codicil her share is manifestly not changed, whilst the shares of the children are. The will gives her an interest in all the land, and this interest is not affected by any disposition, the purpose of which is. to alter the relations of the children to land. She was to have an interest in "The Reservation," and the children were to be equal owners of the residue of it. A codicil intended to affect the shares of the children cannot affect hers by mere implication. There is nothing showing a change of his general purpose as to her, but rather the contrary. It is impossible to suppose, that, when he was providing a home for his children, he was intending by implication to exclude their mother from all interest in it. This codicil was made at the instance of the mother, and it is incredible that the idea should pass unexpressed through the minds of either the father or the mother that it was to be written so as to take away the share previously devised to her. No such intention being expressed, it must be inferred that

[Rose *v.* Jessup.]

it did not exist. This decree will have to be reversed and a decree entered according to the principles of the opinion.

DECREE.—September 27, A. D. 1852. This cause came on to be heard on appeal from the Court of Common Pleas of Susquehanna county, and was argued by counsel, and now, upon consideration thereof, it is ordered, adjudged, and decreed, that the decree of the said Court of Common Pleas be, and the same is hereby reversed. And this Court thereupon proceeding to pass such decree in the cause, as the said Court of Common Pleas ought to have passed, does hereby adjudge and declare as follows, that is to say, that the plaintiffs in the action are entitled under the will of Robert H. Rose to the body of land with its appurtenances, called in the fourth codicil in the said will, " The Reservation," to have and to hold the same, to them, their heirs and assigns for ever, subject to the charges in the said will in favor of the sisters of said plaintiffs, and subject to the estate of Jane Rose, their mother, under the said will; and it is hereby adjudged and declared, that under the said will the said Jane Rose is entitled to have one undivided third part of the said Reservation, to hold the same during her life.

And as to the rest of the estate of the said Robert H. Rose, deceased, after the payment of debts, this Court does further adjudge and declare, that the same is duly vested in William Jessup and Robert J. Niven, defendants, in trust that the same, or the money properly arising therefrom, be divided in such way that Jane Rose, widow of the said Robert H. Rose, shall have one-third of the real estate during her life, and one-third of the personal estate absolutely, including herein all money due to the testator at the time of his death on agreements for the sale of land; and that the residue of the real and personal estate of the said Robert H. Rose, deceased, be divided to and among the children of the said Robert H. Rose, in such way that each son shall have two shares and each daughter one share thereof, to hold unto them severally, their heirs, executors, administrators, and assigns.

And this Court does now here remand this cause to the said Court of Common Pleas, with direction that it be referred to a Master, to state an account of the doings of the said trustees, and to ascertain the amount of trust funds in their hands, and with direction also, that the said trust funds be distributed among the

[Rose v. Jessup.]

widow and children of the said Robert H. Rose, according to the proportions in the former part of this decree declared; and that the said Court of Common Pleas do make such decree as to costs, as to the said Court shall seem equitable and just.

WOODWARD, J., having been counsel in the case, did not sit during the argument.