# Longwell *versus* Bentley.

1. The vendee in a written agreement for the sale of land after payment of
the hand-money acquires an equitable estate in the land and may maintain
*partition* against his co-tenant in common.

2. A person, who without title had taken possession of land, afterwards
purchased the interest of two of the three heirs to whom it belonged, and
subsequently took a *lease* from the said two of the share of the other heir who
was absent and probably dead.　In an action of partition by one who claimed
the third share under a subsequent agreement in writing from the first two
heirs, it was *Held*, that notwithstanding *the lease*, the defendant might show
that he had the exclusive and adverse possession of the whole of the land.

ERROR to the Common Pleas of *Tioga county.*

This was an action of partition by John D. Longwell *v.* Bethuel
Bentley, for partition of a tract of land containing about 54 acres
and 106 perches.　The summons was issued 8th April, 1850.　The
plea was *non tenet insimul.*　The case was tried in September,
1853.

On the trial, evidence was given on part of the plaintiff, to show
that Alvin Bacon lived on the land in 1804, and died in possession
of it in 1813.　Also a deed to him by Charles Pleasants and
others in March, 1809.　Alvin Bacon left three children, all in
their minority, viz., Hiram, the eldest, aged about six years; Da-
vid, aged about four years; and Daniel, aged about two years.

The defendant, Bentley, went into possession of the premises in
1826.　It was stated in the charge of the Court that the father
of the defendant had been one of the guardians of the children
of Alvin Bacon, and probably gave permission to the defendant
to take possession.

On 9th February, 1830, Hiram Bacon, the eldest son, conveyed
the one undivided third part of the land to Bethuel Bentley, the
defendant.　On 1st June, 1830, David F. Bacon, the second son,
conveyed to said Bentley, the one undivided third part.

In relation to *Daniel* Bacon, the third son, it was testified that
he went away when about ten or twelve years of age, to live with
his uncle in the state of New York; that he afterwards left there,
and had not been heard of for some years.　One person testified
that he had seen him in 1827 or 1828, and had never heard of him

[Longwell *v.* Bentley.]

since.   Two or more testified that it was reported that he was dead ten or twelve years or more.

There was also given in evidence an agreement dated April 1, 1839, by which Hiram Bacon, for himself and as attorney of his brother David Bacon, *let* unto Bethuel Bentley the undivided third of the same land, stated to be "*Daniel Bacon's share of the lot*," and stating that, in consequence of the absence of said Daniel Bacon, Bentley was to have the use of the said third part for three years from that date, for putting the place in good repair, and for paying B. Bentley his fees or charge as guardian of Daniel Bacon. A receipt, dated ·May 24, 1839, for $50, for such charge, was given in evidence.

There was also given in evidence a letter of attorney of David F. Bacon to Hiram Bacon, dated 28th October, 1847, authorizing the sale of the remaining undivided third of the land.   Also an agreement dated 15th November, 1849, by which Hiram and David F. Bacon agreed to sell and convey by deed of general warranty to *John D. Longwell* and his heirs, the undivided third of the land, and stipulating that Longwell was to have immediate possession. The consideration stated to be $300; of which $5 was paid at the date of the agreement, and the balance was to be payable on 15th November, 1852.

On part of the *defendant* it was offered to prove that the defendant went into possession of the land in question in the year 1825, and that he had been in possession of the same, holding adversely to the plaintiff since that time.

To this it was objected that, by the lease given in evidence, dated 1st April, 1839, Bentley admitted the title under which the plaintiff claims, and was estopped from alleging adverse possession.   The objection was overruled; and it was testified by Husted and B. Lawrence that Bentley went on the land in 1826—had lived on it since, and that he had made considerable improvements on it— that the house built by defendant cost, perhaps, $1200.   Benjamin Lawrence, also, testified that Hiram Bacon came to his house about four years before, and said he came to sell Daniel's right, as he had been gone twenty-one years.   He said *Bentley* said that his own title was as good as his, and did not want to buy it.   From 1840 to 1849 the land was assessed to Bentley.

On the part of *the plaintiff*, it was proved by E. Rose that he heard Bentley say that he had bought *two-thirds*, and if Daniel ever came back he intended to buy his share.

Another witness testified that he had heard Bentley say he had bought from two of the heirs; and, if Daniel ever came back, he expected to have to buy the other third.

WHITE, J., in his charge observed, That it was contended, on part of the defendant, that the plaintiff could not maintain the

[Longwell v. Bentley.]

action, 1st, because the evidence as to the absence of Daniel Bacon was not sufficient to raise a presumption of his death; and because a contract such as that under which the plaintiff claimed did not vest an estate of freehold in the vendee. 2d. That the defendant had exclusive and adverse possession. He charged that an adverse holding by one tenant in common for any time, however short, before the institution of an action of partition will bar it : 1 *W. & Ser.* 184; 1 *Barr* 324.

He further charged, *inter alia*, that the lease was "a recognition of the title of Daniel; and, if this were an action of ejectment, would defeat a recovery by the defendant upon the plea of the statute of limitations. But it was a lease for three years, and expired on the 1st of April, 1842."

" *It was not presumed at the time of its execution that Daniel Bacon was dead; and the lessors do not lease the property as in their own right,* but speak of it as Daniel Bacon's share, and lease it to Bentley in consequence of Daniel Bacon's absence. *From the expiration of the lease down to the trying of this action of partition, Bentley remained in possession of the lot—paying no rent and recognising no ownership, either in Hiram and David F. Bacon or John D. Longwell.*

" On the contrary, in the winter of 1848, if the evidence of Benjamin Lawrence is believed, Bentley explicitly denied and repudiated the claim of Bacon; alleging to Bacon that his (Bentley's) title was good as theirs—that he had been on the land twenty-one years, and meant to hold by possession.

" *Even if the lease given in evidence could be understood as an admission of the title and possession in Hiram and Daniel F. Bacon, it is difficult to conceive how it could be so lasting in its obligation as to preclude the possibility of a subsequent ouster, and adverse holding by the defendant.* It is therefore submitted to the jury as a question of fact, whether the defendant, at the time of bringing this suit in partition, had the exclusive possession of the premises in controversy, and was holding adversely to the plaintiff. If he had such exclusive possession, and was holding adversely, then this action cannot be maintained; ejectment, and not partition, being the proper remedy against one holding adversely."*

He also charged that the plaintiff had not such an estate in the premises as entitled him to maintain an action *of partition.*

September 15, 1853, verdict for defendant.

Error was assigned to the first paragraph quoted from the charge, and to the parts of the charge between asterisks. Also to the instruction that the plaintiff had not such an estate as to be enabled to maintain *partition.* Also to the admission of the testimony of Husted and Lawrence as to the possession by Bentley

[Longwell *v.* Bentley.]

in 1825 and since; and the condition of the lot at the time Bentley took possession, and as to his improvements.

*Williston* and *Wilson*, for plaintiffs in error.—It was contended, that the plaintiff had sufficient estate in the premises to entitle him to maintain an action of partition: 2 *Chitty Pl.* 73; *Id.* 135; 2 *Troubat & Haly*, last edition, p. 230, title *Partition.* The provision in the first proviso to the Act of 3d June, 1840, that the demandant in partition must have an estate in fee simple in the purpart claimed by him, has been repealed by the Act of 5th April, 1842, *Acts* p. 230, by which proceedings in partition are authorized to be instituted by persons having legal or equitable life estate in any real estate. An equitable title is sufficient in Pennsylvania, to recover upon in partition: 7 *Ser. & R.* 467, Willing *v.* Brown. In some of the cases cited on the part of the defendant in error, there was adverse possession; but it was contended, that in this case Bentley did not hold *adversely.*

*Ryan*, for defendant in error.—To the general rule that a tenant cannot dispute the title of his landlord, there are exceptions— Where a tenant did not receive the possession from the plaintiff, but merely attorned to him, he is not estopped from disputing his title: 8 *B. & C.* 476; 1 *Penna. Rep.* 402; 2 *W. & Ser.* 240; 6 *Wend.* 666–670. It was contended that the instrument of 1st April, 1839, had not the effect of a lease under the circumstances in evidence.

It was further contended that the contract between the two Bacons and Longwell, the plaintiff, did not give to Longwell such an estate as was required by law, to entitle him to maintain partition. That a contract for land without the payment of the purchase-money gave but a bare equity; that it was but a chattel interest. That by the Act of 3d June, 1840 (*Acts* 593), the estate of the demandant in partition is not to be subject to be diminished or defeated by a subsequent event, and the estate of a vendee under a contract may be defeated by his neglect to pay the purchase-money.

An adverse holding by one tenant in common will bar partition. Ejectment is the remedy: 1 *W. & Ser.* 184, Law *v.* Patterson; 1 *Barr* 324; 1 *Harris* 376.

The opinion of the Court was delivered by

LEWIS, J.—Whatever is agreed to be done is considered in equity as done. It follows, from this principle, that a contract for the sale of real estate is considered, in equity, as a conversion of the land into money. The vendor's interest ceases to be real estate. It becomes a chose in action, a personal demand for the consideration-money, which, in case of death, goes to his personal

representatives, and the legal title is held only as a security for the payment of the debt. The vendee becomes, in substance, the owner of the estate. In his hands it is subject to dower and curtesy, and to all the incidents of real estate; and upon his death it goes to his *heirs*, and not to his *personal* representatives. This conversion takes place notwithstanding that it may afterwards be defeated by the non-payment of the purchase-money. Even where the conversion is subject to the happening of a contingency, the property will be taken to be as of the nature it was *intended to be upon the happening of the contingency*: Lawes v. Bennett, 1 *Cox Ca. Cha.* 167; *Leigh & Dalzell on Equit. Conversion.* 19. By the contract between the Bacons and Longwell and the payment of the hand-money, the latter acquired an equitable estate in the land. By the terms of the contract he became entitled to immediate possession; and, under the charge of the Court, we are to take it that the jury would have found that there was no actual possession in hostility to his right. He is to be treated as having the possession and the right of possession, with a right also to a conveyance of the legal estate upon the payment of the consideration-money. This is an equitable estate, and it has long ago been decided that an equitable estate is sufficient in Pennsylvania to support an action of partition: Willing v. Brown, 7 *Ser. & R.* 467. The existence of a judgment or a mortgage against an undivided interest presents no obstacle to a partition, because the encumbrance attaches upon the part set out for the one against whom it was entered: Bavington v. Clark, 2 *Penna. Rep.* 124; Jackson v. Pierce, 10 *John.* 414, 417. The same principle may be applied to the case of an encumbrance secured by the vendor's retention of the legal title. The vendor, who has neither the possession nor the right of possession, cannot be said to *hold together* with his former co-tenants in common. It would be impossible for him to maintain an action of partition in such a case. If the vendee may not be a proper party to such a proceeding, the other persons interested might be deprived of the right to divide the land. This cannot be. The parties are compellable to make partition. The vendor, who intrusted the vendee with the actual possession, and with the incidents of ownership, is bound by the proceedings. In case of a sale his rights can be as readily protected by the Court as can the rights of a judgment or a mortgage creditor. We are of opinion that the Court was in error in holding that the plaintiff has not such an estate in the premises as will enable him to maintain an action of partition. We perceive no other error in the proceedings before the Court of Common Pleas.

Judgment reversed and *venire facias de novo* awarded.