# Leiper's Executors *versus* Irvine.

Where the owner of real estate died after the making of an article of agreement for the sale of it, the rescission of the contract after his death, worked a reconversion of the estate into *land*, each distributee or legatee taking such interest in the land as the will or the law would have given him in the price, after payment of the debts of the decedent.

As to the creditors of the decedent, neither the agreement of sale nor the death of the owner worked any conversion of the real into personalty, whether their liens were acquired before or after the contract of sale, previous to or at the death of the decedent.

Where such lands were held by the decedent as tenant in common with others, the parties in interest would be entitled to immediate possession as tenants in common, or to partition, to hold in severalty, subject to the para-

[Leiper's Executors v. Irvine.]

mount rights of the creditors, to be ascertained and enforced by proceedings in the Orphans' Court.

Where such lands are held by a trustee, a court of equity will not decree a conveyance of them to the executors to enable them to sell them for the payment of the debts of the decedent.

CERTIFICATE from the Court of Nisi Prius.

This was a bill in equity, filed by the executors of Samuel M. Leiper, deceased, against William A. Irvine, Thomas Struthers, Henry M. Watts, and also against the minor children of Samuel M. Leiper, deceased, to compel the conveyance of certain lands to the complainants.

From the bill, answer, exhibits, and depositions in the case, the following facts appeared.

On the 14th day of June, 1853, Samuel M. Leiper, the testator, together with William A. Irvine, Thomas Struthers, and Henry M. Watts, purchased a large body of land in Elk and McKean counties, embracing over 120,000 acres, for the sum of $151,886, of which sum $121,508.80 were to be secured by bond and mortgage on the premises, payable in one, two, three, and four equal annual instalments. For the more convenient management and disposition of the lands, the conveyance from the owners was made to William A. Irvine alone, who also executed the bonds and mortgage for the payment of the instalments. On the 22d June, 1853, Dr. Irvine executed a declaration of trust, reciting the conveyance to him; and, that as to three equal undivided fourth parts, that he held the same in trust for the said Leiper, Struthers, and Watts, each one undivided fourth part severally, subject to the payment of the balance of the purchase-money.

On the 10th of January, 1854, with the assent and authority of his co-tenants, Dr. Irvine entered into an article of agreement with James Foster and others, for the sale of the lands, at the price of $4 per acre—to be paid $200,000 in money, and the balance in certain railroad stock. $40,000 in money to be paid in hand, and the balance in four equal instalments. The payment of the hand-money to be by negotiable paper of the purchasers, and to be regarded as absolute payment, so far as the money could be realized upon it without the endorsement of the vendors.

The paper was taken in drafts, drawn by some of the purchasers, and endorsed by others at forty and seventy days.

On the 17th February, 1854, and before the maturity of the paper, Samuel M. Leiper died, leaving a will, dated 7th December, 1843, and various codicils; and in which the plaintiffs were appointed his executors, and to whom letters testamentary were issued.

By the will (among other things), after providing for his wife

by giving her the house in which he resided, with the furniture, and certain land during life, and an annuity of $800, which he charged upon his real estate in Philadelphia and Delaware counties, to be increased to $1200 after his children should have arrived at majority, with some other bequests, he left the residue of his estate, real and personal, to his children, all of whom are minors, and appear to this suit by their guardian, John P. Crozier.

The widow was an executrix in the will, and one of the plaintiffs as such in this bill. After the death of Mr. Leiper she elected not to take under the will.

The drafts given for the hand-money were all protested for non-payment.

Dr. Irvine afterwards, on the 22d April, 1854, obtained from the purchasers an agreement that if they should fail to pay the first instalment within ten days thereafter, he should have the option to annul the contract. The payment was not made within the stipulated time, and he declared the contract at an end, and the purchasers surrendered the agreement.

The bill further states that the amount of the liabilities, direct and collateral, payable out of Mr. Leiper's estate, exceeds $50,000, to meet which there are only about $10,000 of personal assets, unless his interest in these lands is to be considered and dealt with as personal estate.

It alleges that by the contract for the sale before referred to, Mr. Leiper's interest in the lands was converted into personalty, and so continued to be at the time of his decease, and still continues to be, and is to be treated and dealt with as personal estate in the payment of his debts and legacies, and in the settlement and distribution of his estate; that Dr. Irvine holds the legal title to one equal undivided fourth part of the lands in trust for the plaintiffs as executors of Mr. Leiper's will; and ought to convey the same to them as executors, to be by them applied as the personal estate of Mr. Leiper, and prays that he may be decreed to convey to them accordingly, and also for general relief.

The answers of Irvine, Struthers, and Watts, admit the allegations of the bill.

Dr. Irvine submits to the direction of the court in the premises, praying their protection, and to be properly indemnified, &c.

The answer of the minor children of Mr. Leiper, by their guardian, Mr. Crozier, admits nothing, but submits the interests of his wards to the protection of the court.

The question for the decision of the court is, whether Mr. Leiper's interest in these lands is to be treated as personal estate.

His Honour, Justice KNOX, sitting at Nisi Prius, dismissed the bill, and the plaintiffs took this certificate.

The opinion of the court was delivered by

LEWIS, C. J.—We may concede, for the purposes of this case, that the contract of sale made by William A. Irvine, the trustee, with the assent of Samuel M. Leiper, the *cestui que trust*, brought the land within the rule of equity which required it to be treated as personal estate, for the purpose of regulating the succession to it. We may also concede, for the present, without, however, deciding the point, that upon the death of Mr. Leiper, his widow and children became entitled to have their interests in the purchase-money distributed as personal estate. If they had a right to the proceeds, they had, of course, a right to take the land, in lieu of the money, with the assent of the vendees. The rescission of the contract of sale after the death of Mr. Leiper was, therefore, a reconversion of the personal estate into land, each distributee thus acquiring the same interest in the land which he held in the proceeds at and immediately before the reconversion. But what was that interest? Nothing more than such share as the will or the law gave after payment of the debts of the decedent. The original contract of sale did not work an absolute conversion of the real estate into personalty against the will of the creditors. They might, notwithstanding such contract, obtain judgments against it, and sell it as real estate; and the proceeds would be distributed among the lien creditors, according to their priority, precisely like the distribution of any other real estate. Mr. Leiper could also have mortgaged it, or conveyed it as real estate, and these acts would have been perfectly valid to pass whatever remaining interest he possessed, without any such delivery or change of possession as is required to pass a title to personal property. If the creditors had the right to treat the property as land during the lifetime of Mr. Leiper, did they lose it by his death? It has never been supposed that the death of a debtor changes his real estate into personalty. So far from producing that effect, the creditors of Mr. Leiper acquired, on his death, by operation of law, liens on the property in question for the amounts of their several debts. If the contract of sale remained in force it would have been the duty of the executors to carry it into effect, and to make conveyances to the purchasers, not by virtue of their authority over it as personal estate, but in pursuance of the statutory direction which subjects them to the supervision and control of the courts. In such cases the proceeds must be distributed as real estate, so far as the creditors are concerned, and respect must be had to priority of liens, although all the liens may have been created after the alleged conversion. It follows from these principles that, so far as the creditors are concerned, there has been no conversion of the real estate into personalty; and that so far as the distributees are interested there has been a reconversion into land, and that the parties in interest

[Leiper's Executors *v.* Irvine.]

have a right to immediate possession as tenants in common, or to partition, to hold in severalty, subject to the paramount rights of the creditors. These rights can be ascertained by settlement of the administration account, and the sale of so much of the land, under the orders of the Orphans' Court, as may be necessary, after the application of the personal estate proper, for the payment of the debts of the decedent. The purchasers under such sales would take as good a title without the conveyance by Mr. Irvine as with it; but if it should be necessary, for the purpose of removing doubts, he can be directed, in a proceeding for the purpose, to execute conveyances to the purchasers. In the mean time, we are unable to see the propriety of directing Mr. Irvine to convey to the executors. It is not alleged that he is abusing the trust. The creditors (admitted to amount to $40,000, after the personal estate proper is applied to their claims) have not been made parties to this application, and it does not appear that their interest would be promoted by granting the prayer of the bill. The five minor children of the decedent, who own at least two-thirds of the property which may be left after payment of debts, are opposed to the bill. The only person interested, who desires the conveyance, is the widow. Her interest, at most, cannot exceed one-third of the residue after payment of debts. What that residue may be is not apparent now. It depends upon the amount of the debts, the prices which may be obtained for the property, and the expenses of settling the estate. The widow has not filed this bill for the protection of her individual rights. She is at present before us with the other executors in a representative capacity; and it is sufficient for the purposes of the case to say that the executors have shown no title to the relief demanded.

The judgment of the Court of Nisi Prius is affirmed; and the complainants are directed to pay the costs, without prejudice to their rights to charge them against the estate, on the settlement of their administration account.