## Long's Estate (No. 1).

*Wills—Devise—Proceeds of lots sold—Scope of devise—Deeds.*

Where a woman owned several acres of land in a borough, fifty of which constituted a homestead farm, and twenty of which were separated from the others by a street, and by her will she devises a tract of land described as "the farm" with all the personalty thereon to certain devisees, and it appears that two years prior to the date of her

will she procured the twenty-acre lot to be laid out in town lots and at the date of the will had sold all of these lots and had received the full purchase price for them, but had not made deeds for certain of them, the devisees cannot claim the proceeds of the town lots received by the testatrix in her lifetime and in her possession at the time of her death.

Argued Nov. 22, 1910. Appeal, No. 28, Oct. T., 1910, by Carrie Tyler Cash, from decree of O. C. Bradford Co., May T., 1909, No. 22, dismissing exceptions to adjudication in estate of Fanny E. F. Long, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to report of Henry Streeter, Esq., auditor. The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*J. C. Ingham,* for appellants.—While in equity a sale on a contract works a conversion of the unpaid purchase money into personalty, nevertheless, the interest of the vendor is of such a character that the unpaid purchase money will be subject to the lien of a judgment, or a mortgage, or will pass by a deed, or a devise by a will, even when referred to simply as land or real estate: McCleery v. Stoup, 32 Pa. Superior Ct. 42; Leiper's Executors v. Irvine, 26 Pa. 54; Kinports v. Boynton, 120 Pa. 306; Costen's App., 13 Pa. 292; Dutton's Est., 181 Pa. 426; Dunn's Est., 24 Pitts. Leg. J. 109; Lemon v. Thompson, 1 P. & W. 482; Wright v. Minshall, 72 Ill. 584; McTaggart v. Thompson, 14 Pa. 149; Balliet's App., 14 Pa. 451.

*Chas. M. Culver* and *Joseph W. Beaman,* for appellee.

OPINION BY HEAD, J., April 17, 1911:

The testatrix died seized and possessed of considerable property, both real and personal. In her lifetime she had

been active and successful in its management and was familiar with the ordinary contract and conveyances usual and necessary in the management and disposition of property. Prior to July 24, 1902, she was the owner, inter alia, of a tract of land in the borough of Athens, Bradford county, which then contained about seventy acres. As to the portion of that tract west of Elmira street and extending thence to the Chemung river, there is no doubt that it was used as a farm and was generally known as the "Tyler Farm" because it, with considerably more land to the east, had been owned by the paternal grandfather of the testatrix whose name was Tyler. The mansion house thereon was known as the "Tyler Homestead." The remainder of the original tract, about twenty acres, being its northeastern part, was cut off from the portion just referred to by Elmira street. It is not clear from the testimony that this piece, although originally part of the same farm, had been in recent years used for agricultural purposes as a part of the farm. There is evidence that it had been laid out as a plan of lots, although we do not understand that any of these lots had been sold.

On July 20, 1902, the testatrix entered into an agreement in writing with one George A. Lamkin which recited that she was the owner of a piece of land bounded on the west by Elmira street and containing twenty acres more or less which she was desirous of selling to the best possible advantage. It was therein further agreed that Lamkin should at once enter upon said ground, cause it to be surveyed, open new streets therein, and make such improvements as he might deem best adapted to effectuate the object in view, and pay all the necessary expense of plotting the said tract into town lots. It was further provided that he should sell the said lots either for cash outright or upon contracts, and he therein obliged himself to pay to the testatrix the sum of $150 per acre for the land as he would sell it. It was agreed that settlement should be made as often as five lots would be sold, and the testatrix stipulated that if enough in cash should not be paid by the

lot purchasers she would take assignments of the contracts sufficient to complete the settlement. The agreement then provided "and when the said sum ($150 per acre) is received by the said party of the first part from the said party of the second part in full for the acreage, then from the balance on the sale of the said lots the taxes shall be deducted and the balance of the sale price shall be divided equally between the said parties to this agreement."

Lamkin, with the consent of the testatrix, associated with himself two other gentlemen named respectively Cowell and Haverly. They at once entered and took possession of the tract and thereafter it was never again in the possession of the testatrix. They did the work provided for in the agreement and placed of record their plan of lots in the name of Haverly, Cowell & Lamkin and began to make sales. As already stated, the great bulk of the land embraced in this plan had been at one time a part of the Tyler farm. The plan, however, included two smaller pieces of ground, never part of the Tyler property, the title to which had been secured either by purchase or exchange to straighten lines and avoid irregular shaped lots. The great majority of these lots had been sold in the lifetime of the testatrix. As early as October 31 she executed a receipt to Lamkin showing that contracts of lot purchasers amounting to $3,833 had been assigned to and accepted by her and that the money secured by these contracts was to be thus applied: "$2175.50 for balance due on acreage 21.17 acres, and $1657.50 to apply on profits on sale of lots. as per contract dated July 24, 1902." There is no evidence to point to the fact that there was at any time any loss on any of these contracts, and it thus appears that as early as October, 1903, the testatrix had been paid in full, in a manner satisfactory to her and stipulated for in her agreement, all of the purchase money which was to stand in lieu of her theretofore sole ownership of the land.

It seems to have been the understanding, although not specifically provided for in her agreement, that she would

retain the legal title to the land until the lot purchasers had paid their purchase money in full. But it is clear that the retention of the legal title in this manner could operate in no other way to her benefit than to secure the payment of the purchase money stipulated for in the contracts which had been assigned to her. For all practical purposes she had parted with her ownership in the land and could no longer enjoy the incidents that attach to the beneficial ownership of real property. Had there been any sudden accretion in the value of the land, or any of the lots into which it was subdivided, such accretion would in no way have been beneficial or advantageous to her. She had agreed to accept the money stipulated for in the several contracts in lieu of the land, and with the receipt of that money she must have contented herself no matter how greatly the land itself might have suddenly increased in value. Her retention of the legal title left her in practically the same situation as if she had made a conveyance and taken a purchase money mortgage, because the law would compel her to convey upon the receipt of the money.

It is doubtless true that under these circumstances she retained some estate in the land as long as there was purchase money due her, but we are not directly concerned with the nature of that estate or interest, nor need we go out of our way to discuss the incidents that would attach to it. The important question involved in this appeal is the true construction of the language of clause ten of the will of the testatrix and the determination of what was the subject-matter of the devise therein contained. Before addressing ourselves more particularly to that question it will be proper to advert for a moment to the proceedings taken in the orphans' court to bring about decrees of specific performance. The inventory filed by the executors contained not only the securities already referred to, which had been assigned to the testatrix, but showed that she died possessed of considerable other personal property. This was confirmed without objection from any source. To No. 31 of September Term, 1905, Lamkin,

Cowell & Haverly filed a petition setting forth the death of the testatrix, the probate of her will, the names of all of her legatees and devisees, and averring that by the agreement of July 24, 1902, she agreed to sell and convey the land therein described to the said Lamkin for $150 an acre, with the additional provision, previously quoted, for a share in the further profits of the sales. The petitioner averred that under the terms of that agreement he had taken possession of the land and had paid to the testatrix during her lifetime the full sum of $150 per acre called for in the agreement; that he and his associates had sold a great number of the lots in said plan and that the testatrix in her lifetime had made deeds for a number of the lots thus sold, which presumably had been paid for in full; that at the time of her death she held by assignments contracts covering a number of other lots mentioned and that there still remained some which the petitioner and his associates had not yet sold to individual purchasers, but for which they were entitled to a deed because they had paid to the testatrix in her lifetime the amount stipulated for as the purchase price of the land as between her and them. They therefore prayed for a decree of specific performance of the said contract and that the executor be directed to make conveyances to the petitioners for the lots last enumerated upon paying or securing any balance due thereon under the contract. The various devisees interested, this petitioner among them, accepted service of the citation, declared to the court that they had read the petition, that they understood the facts therein averred and believed them to be correct, and joined in the prayer for a decree of specific performance. The decree was accordingly made and still stands, so far as we are advised, unreversed and unappealed from.

The testatrix died in March, 1905. In the tenth clause or paragraph of her will, which was executed in July, 1904, she provided as follows:

"Item Tenth:—I give, devise and bequeath unto Carrie Tyler Cash and Anna Tyler Noble, all that certain lot,

piece or parcel of land situate, lying and being in the borough of Athens, county of Bradford and state of Pennsylvania, between the Chemung river on the west and Pennsylvania avenue on the east, and known as the Tyler farm, together with whatsoever personalty there may be on the said premises at the time of my decease," etc.

The present appellants in this and the succeeding appeal are the two devisees therein named. Their contention is that the devise carried to them not only the compact body of land containing about fifty acres which the testatrix owned and occupied up to the time of her death, but also the twenty-one acres which had been the subject-matter of her contract with Lamkin, the history of which we have already referred to; and that inasmuch as she had sold by articles of agreement, prior to the date of the will, a portion of the land covered by the devise, the latter gave to them the purchase money that would result from those contracts in lieu of the land itself, and they accordingly claimed it on distribution. The appellees who resist this contention are the residuary legatees and claim that the decedent died in this respect possessed of personal property intended to be carried by the residuary clause of her will. The auditor who made the distribution held that the moneys secured by the lot contracts fell into the residuary fund and so distributed them. The learned court below in a careful opinion reviewed the entire question and confirmed the report of the auditor and we now have this appeal.

Looking at the language of the section of the will we have quoted, it can scarcely be doubted that the intention of the testatrix was to devise a tract of land of which she was the owner, and not only a tract of land but a tract of farm land, to wit, the tract known as the "Tyler Farm;" and in describing the personal property that passed with the devise it was declared to be that "on the said premises at the time of my decease." Now there was a tract of land known as the Tyler farm which in every respect, unless with the single exception we shall presently note,

fitted and answered to the language of the devise.  The twenty-one acre piece which she had cut off more than two years before she made her will could not, in any fair and ordinary sense of the term, have been regarded by her at the time of making her will as her land, and particularly her farm land.  She had been out of possession of it since 1902.  She had been paid for it at the rate of $150 per acre, which was the price she put upon her individual ownership.  She had bound other people to expend much time and labor in preparing that property for sale in lots. She knew that ,a large number of sales had been made to individual purchasers and that each one of them had acquired an interest in those lots proportioned to the purchase money he had paid.  She knew that Lamkin and his associates had just the same interest in that property that she had after she had received her acreage price.  She knew that in many instances the lot purchasers had paid in full and that she had made deeds to them as shown in the petition for specific performance already referred to. It could not be possible, as we view it, that as to these lots certainly she had or believed she had any ownership whatever, and the purchase money of them, in so far as it belonged to her, was either in the bank or had been otherwise used and expended by her.  When therefore she gave to the devisees named a tract of farm land, with the personal property on the premises, she could not have intended thereby to give them any interest in the lots which had been fully paid for and for which she had made conveyances, and there is nothing in the language of the devise to differentiate them from those upon which some of the purchase money remained unpaid or from those which Lamkin, Cowell & Haverly had not yet sold to individual purchasers.

We are not called upon to say that where an owner of land enters into an executory contract for its sale and has received part of the purchase money he does not retain an estate in the land which may be bound by the lien of a judgment or pass by a deed or devise clearly defining

and describing it. In such cases, where the only effect that can possibly be given to such deed or devise to make it operative is to give to the grantee or devisee the money into which the land has been practically converted by the executory contract of sale, the courts have given them such effect rather than declare them void and without any effect. We have no such question before us. Our concern is to interpret the language used by the testatrix and . thus determine whether or not her expressed intention included the money which came to her in the manner indicated.

In Rose v. Jessup, 19 Pa. 280, very much the same question now before us was presented to the court. Mr. Justice LOWRIE, speaking of executory contracts for sale of land, said: "It is equally plain that where the testator had sold real estate by valid agreements, the sums due thereon were part of his personal estate, and that on his death his widow's interest therein became immediately vested. It follows, that the trustees were bound so to administer this portion of the estate that her interest should not be affected by any act or omission of theirs." If in that case the purchase money evidenced by the executory contracts of the testator was personal property, so that his widow was entitled to her share therein, it is difficult to see why the same principle should not be applicable here. So in Leiper's App., 35 Pa. 420, Mr. Justice THOMPSON said: "The sale of the land out of which this controversy has arisen . . . . undoubtedly brought the land within the rule in equity which requires it to be treated as personal estate for the purpose of regulating the succession to it. That it was such a conversion, so far as the widow and heirs were concerned, is clearly ruled in Rangler's App., 3 Pa. 377; Foster v. Harris, 10 Pa. 457; Rose v. Jessup, 19 Pa. 280; Longwell v. Bentley, 23 Pa. 99; Leiper's Executors v. Irvine, 26 Pa. 54." In Luckenbach's App., 162 Pa. 18, Mr. Justice DEAN quoted with approval the following language from the opinion of the court in Longwell v. Bentley, 23 Pa. 99: "A contract for

the sale of real estate is considered in equity as a conversion of the land into money. The vendor's interest ceases to be real estate. It becomes a chose in action, a personal demand for the consideration money, which in case of death goes to his personal representative, and the legal title is held only as a security for the payment of debt. The vendee becomes in substance the owner of the estate," etc.

Both reason and authority therefore unite to support the conclusion that the devise in question was to be confined to the compact body of land still owned in fee by the testatrix and could not have been intended by her to carry the unpaid purchase money in the lots scattered through the plan for which she had not yet made deeds. But it appears that if the devise be thus interpreted, the land covered by it would extend no farther than what is now called Elmira street, the plan of lots already referred to covering the territory between that street and Pennsylvania avenue farther east. It will be remembered that in the language of the devise, the piece or parcel of land was said to be located between the Chemung river on the west and Pennsylvania avenue on the east, known as the Tyler farm. From the use, by the testatrix, of the words Pennsylvania avenue, it is strenuously urged upon us that the devise must cover every kind and description of an interest in any kind of real estate which the testatrix may have owned between the river and Pennsylvania avenue. We do not regard as thus controlling this expression, which is rather descriptive of the location of the subject-matter of the devise than declaratory of that subject-matter itself. As we have already said, as we interpret the language of the testatrix, the subject-matter of her devise was a tract of farm land. There was such a tract which she owned in fee, lying between the Chemung river and Pennsylvania avenue. It is true, it does not extend to Pennsylvania avenue but stops some distance short of it. It is to be observed that the testatrix does not say that the land she devises is bounded by Pennsylvania

avenue, nor that it extends to Pennsylvania avenue. It may well have been, owing to many local conditions that do not appear in the record, that this street was more prominently in her mind at the time she made her will than Elmira street and she therefore used it as descriptive of the second of two points between which the farm she devised was located.

However that may be, it appears to us after careful consideration that it would be attaching undue importance to the use of these words to build upon them the legal conclusion that the two devisees of the land described in clause ten were also to take the entire purchase money derived from the sale of the plan of lots so often referred to, instead of the share of it given to them along with other relatives in the residuary clause of the will. We are therefore of opinion that the learned judge of the orphans' court was correct in confirming the distribution prepared by the auditor and dismissing the exceptions thereto.

Decree affirmed.