Paul's Estate.

252

*Edmonds, Obermayer & Rebmann,* for exceptions.
*William M. Boenning,* contra.

STEARNE, J., July 11, 1930.—Decedent, a resident of the Commonwealth of Pennsylvania, possessed in his lifetime real estate situate in the States of Missouri and New Jersey. He executed formal written agreements of sale therefor and accepted substantial payments on account of the purchase price. The death occurred before the execution of the deeds, and the contracts were completed by the executrix by the delivery of proper deeds upon the receipt of the unpaid portion of the consideration money.

The appraiser appointed by the Register of Wills to appraise the value of the property or estate of the decedent for inheritance tax purposes appraised the unpaid portion of the consideration money due under the contracts of sale of the real estate in such foreign jurisdictions as part of the *personal estate* of such decedent, and in pursuance thereto assessed a tax. The sole beneficiary under the will, and executrix therein named, appealed from such appraisement and assessment. Upon a hearing, the action of the appraiser was affirmed. Exceptions were taken to the opinion of the Hearing Judge, and the matter is now before us for review.

The United States Supreme Court and the Supreme Court of this Commonwealth have very definitely ruled that one state, *by a theory or fiction of law,* may not tax tangible real or personal estate actually located in another state: Frick *v.* Pennsylvania, 268 U. S. 473; Robinson's Estate, 285 Pa. 308; Com. *v.* Presbyterian Hospital, 287 Pa. 49; Croxton's Estate, 288 Pa. 184.

All of the cases above cited, it is true, relate to the application of the legal fiction of equitable conversion by decedent's *will.* We are of opinion that the same taxation principle must similarly be applied when precisely the same fiction is invoked with respect to a decedent's *contract.*

The error into which the Hearing Judge has fallen lies in failing to distinguish between the application of the doctrine of equitable conversion when applied to the parties themselves or their privies and as it may affect the rights of strangers, particularly those of another sovereign state.

In order to sustain the legal conclusion that the foreign real estate was personal property in Pennsylvania, the Hearing Judge relies upon the theory and operation of the doctrine of equitable conversion. He decided that the conversion had actually taken place, *inter vivos,* because of the execution of the contracts of sale. Numerous cases are cited as authority for the familiar operation and effect of the application of the doctrine of equitable conversion. Briefly summarized, it is that, immediately upon the execution of a valid

agreement of sale, the equitable title passes to the vendee; the vendor thereafter holds the naked legal title to the real estate, as trustee, which he will be obliged to transfer to the equitable owner or vendee upon full compliance with the terms concerning payment of the purchase money; that, pending completion of the transaction, should either or both of the parties die, the proceeds from the sale pass to the vendor's heirs, as personal estate, and the vendee's heirs inherit the real estate as of the date of the contract of sale. We concede that the Hearing Judge accurately stated the principles relating to the application of the doctrine of equitable conversion between the parties concerning valid contracts for the sale of real estate.

The decision of the Hearing Judge, however, rests upon the theory that the contract of sale *conveyed* the equitable title to the real estate. This is fallacious. It is *not* the contract which *transfers* title. The equity powers of the court are invoked to accomplish that. Equity regards that done which should have been done, and, therefore, *orders* a conveyance upon the doctrine of equitable conversion.

To demonstrate that it is *not* the *contract* operating as a deed which actually conveys, but is the equity power of the court, see Orr's Estate, 283 Pa. 476; Welsh *v.* Ford, 282 Pa. 96; McCullough's Estate, 292 Pa. 177. These cases are examples of the familiar principle that even though the contract may be perfect in form and for a valuable consideration, yet if equities intervene relief may be withheld.

Again, it has been decided that the doctrine of equitable conversion has no application when the rights of strangers intervene. Thus creditors of a vendor do not lose their liens because of the vendor's contract of sale: Leiper *v.* Irvine, 26 Pa. 54.

Mr. Bispham, in his Principles of Equity (9th ed.), concisely states the general nature and extent of the doctrine of equitable conversion:

"307. By equitable conversion is meant a change of property from real into personal, or from personal into real, not actually taking place, but presumed to exist only by construction or intendment of equity. 'Nothing,' it has been said, 'is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted; and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited, or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed. The owner of the fund, or the contracting parties may make land money or money land.' By this and similar declarations the judges do not mean to assert a solemn piece of legal juggling without any foundation of common sense, but simply to lay down the practical doctrine that for certain purposes of devolution and transfer, and in order that the rights of parties may be enforced and preserved, it is sometimes necessary to regard property as subject to the rules applicable to it in its changed and not in its original state, although the change may not have actually taken place."

"309. Conversion may arise not only under a trust in a will (of which an illustration has just been given), but also under settlements and other instruments *inter vivos*. Where (for example) a binding contract is made for the sale of land, from that instant a conversion takes place. The purchaser is regarded for many purposes as the owner of the land, and the rights of parties claiming under him are determined by the rules which govern the devolution of realty. If the purchaser dies before conveyance, his heir will take the

land, and the executor will be obliged to pay the purchase-money. So where a trust is created by deed under which it is the duty of the trustee to foreclose mortgages, buy in the mortgaged real estate, sell it and distribute the proceeds, the interests of the *cestuis que trustent after* the trustee had bought in the land but *before* he had sold it, are to be deemed personalty and not real estate. *Qua* the beneficiaries, the real estate vested in the trustees, is deemed in equity converted into personal property."

Our Pennsylvania authorities amply support the text. Mr. Justice Sharswood, in Foster's Appeal, 74 Pa. 391, said:

"Conversion is altogether a doctrine of equity. In law it has no being. It is admitted only for the accomplishment of equitable results. It may be termed an equitable fiction, and the legal maxim *in fictione juris semper subsistit equitas* has redoubled force in application to it. It follows, of necessity, that it is limited to its end."

Mr. Justice Mitchell, in Wentz's Appeal, 126 Pa. 541, at page 551, wrote:

"It is not uncommon to say that the proceeds of real estate remain realty, etc., but the expression is not accurate. The money never is real estate, in law any more than in fact, but for certain purposes, and within certain limits, it is treated *as if* it was real estate. The purpose is to preserve the inheritable quality of the estate, so that the title may not be diverted from the previous owner, and the limit is the first devolution. The whole doctrine is the creation of equity for a specific purpose, and when that purpose is accomplished the rule ceases to operate."

We are irresistibly drawn to the conclusion that the doctrine of equitable conversion, whether *inter vivos* or by will, is, in its final analysis, but a *fiction of law*. Upon the death of the owner, real estate remains real estate and personal estate continues to be personal estate. It is only to preserve and enforce the rights of the respective parties that equity invokes the doctrine. It is, however, encompassed within these limitations that equity acts. Where the rights of others intervene, the doctrine has no application.

As pointed out by our Supreme Court in the cases above cited, no fiction or theory of law in the state of the domicile can affect the rights of another sovereign state over immovable real estate or tangible personal property within its borders. It, therefore, follows, as a necessary conclusion, that if the property sought to be taxed is not within the jurisdiction of this Commonwealth, any attempt to assess the tax is void because it contravenes the due process clause of the 14th Amendment of our Federal Constitution: Frick *v.* Pennsylvania, 268 U. S. 473. The reason, pointed out by Mr. Justice Van Devanter, why a state may not tax such property situate in another state is that such property (page 489) *"receives none of the protection for which the tax is supposed to be the compensation."*

It has been argued by the learned counsel for the Commonwealth that, conceding, for argument's sake, the soundness of the above legal reasoning, yet the assessment should be sustained because (1) the contracts are choses in action; (2) they were made by decedent; (3) they had a value; (4) they were, therefore, properly assessable.

Such reasoning is unsound. The contracts, under whatever name they are called, have no value unless the real estate is conveyed and the balance of the purchase money collected. It is unthinkable to consider that upon the execution of the contracts the decedent enlarged and fructified his property rights; that thereafter he possessed his real estate but added or appended thereto choses in action consisting of promises to pay the balance of the consideration money. In truth and in fact, what the decedent owned was but one form of

property. *For inheritance taxation purposes* it requires judicial determination whether such property is real or personal estate in the possession of his executor. To subject the contract itself—or, more properly speaking, the unpaid consideration secured by it—to such assessment would be invalid. *It would be doing indirectly what is forbidden to be done directly.* See Frick *v.* Pennsylvania, *supra,* page 495. Furthermore, to tax the real estate located in one state and the proceeds in another is a form of double taxation which is now distinctly forbidden by our United States Supreme Court: Baldwin *v.* Missouri, 281 U. S. 586; see Legal Intelligencer, May 30, 1930, page 612.

We are not influenced in our judgment by the frank admission of counsel that no tax was claimed or assessed in either Missouri or New Jersey. Such omission may have been due to an accident or mistake on the part of the taxing authorities, in which event it is quite possible that a claim may yet be presented at the audit of the executrix's account; or the claim may appear and be enforced upon a subsequent conveyance of the real estate. In any event, such consideration can have no weight in determining the Commonwealth's *right* to assess and collect the tax.

There is apparently no reported Pennsylvania decision directly in point with the present case. However, the same question was raised in the State of New York, and has been decided adversely to the claim of the Commonwealth. In re Baker's Estate, 124 N. Y. Supp. 827, the court said (page 828) :

"The doctrine of equitable conversion, in its application to a decedent's estate, concerns only those who have come into relations of contract or privity with the decedent or his estate. The fiction of conversion adjusts rights and imposes equities, but it cannot change facts or work inequity. In adopting it the law makes believe that the things which have been arranged to be done have been done, but this amiable pretence must be confined by the impulses which inspire it to the persons in privity with the transaction. There is no equitable need for its extension to others. Strangers have nothing to do with the reason for its being and nothing to do with its operation. In the best defined case of equitable conversion the legal owner of the lands retains as to persons not in equitable relations to himself all the rights and duties which belong to his seisin."

We, therefore, decide that the assessment of the tax was in error. The first, second, third and fifth exceptions are sustained.

Because we have decided that no tax is due, we need not rule upon the remaining questions. However, we repeat what we decided in Borie's Estate, 13 D. & C. 355. An appraisement and assessment, unappealed from, becomes final and conclusive. Upon the submission of a new asset for an additional assessment, the only permissible deductions are those relating exclusively to such asset. The fourth exception is dismissed.

The appeal is sustained and the record is remitted to the Register of Wills.

VAN DUSEN, J., dissenting.—In solving the present problem too much reliance should not be placed on the doctrine of equitable conversion. Of course, fictions cannot be taxed. I do not think we are dealing with a fiction, and on further reflection would state my conclusions in this way:

The succession to the property right of a deceased vendor of real estate should be taxed at his domicile, and the succession to the property right of a deceased vendee at his domicile, according to the value of the respective rights. The *situs* of the land is immaterial. For the character of the vendor's property has been so modified by the contract of sale that it cannot be regarded as land only. He has a mixed piece of property, and the dominant

256

element in it is the right to demand the purchase money, just as the dominant element in a mortgage is the debt and not the land. A mortgage is taxed at the domicile of the mortgagee, and a vendor's contract of sale should be taxed at his domicile. The administrator will get the purchase money and should, therefore, pay the tax, not the heir. If the tax is laid on the land without considering the agreement of sale, it might be more than the value of the vendor's interest therein, whereas, if the tax is laid on the net value of the land after deducting purchase money paid, it would seem as though the thing taxed was really the unpaid purchase money and not the land. These considerations tend to show the true nature of the vendor's property right.