## FOSTER *v.* HARRIS.

[ 10  457
162   22

A sale of all the land of the vendor will not pass his interest in certain real estate which had been sold by his ancestor, and conveyed by the administrators, under a decree of the court, before the sale by the vendor.

A. purchased the land of an heir, and gave his bonds. It was agreed between them that so much as should be required to pay the ancestor's debts, exceeding a certain sum, should be deducted from the bonds, and that they were not to be paid until the estate was finally settled. A. administered, and the estate was finally settled in twenty years from that time; but no part of.the amount due on the bonds was required for payment of debts, which were paid by sales of real estate. He must pay interest on the bonds from their maturity, for the debts were paid out of property which he might at any time have applied for that purpose.

In error from the Common Pleas of Dauphin.

In 1812, McClay entered into articles for the sale of certain lots in the county of Dauphin. Before execution of the deed, or payment of the purchase-money, McClay died seised of other real estate, leaving Mary Awl one of his six heirs. The title to the property conveyed by the articles was then perfected by the administrators, under decree of the court, in 1814. In 1813, Mary Awl, with her husband, entered into articles with Foster, reciting the death of McClay, seised of "considerable real estate in the county of Dauphin," and that the trustees of her husband were entitled to his life-estate in her property, and that it had been agreed that $12,000 of McClay's debts should be paid out of his lands in Dauphin, and the residue out of other property. It was further agreed, that the vendors would, on request, convey to Foster all the estate or interest "which they now have in all the estates that have descended to the said S. Awl and Mary his wife, from the said William McClay, situate in the county of Dauphin, subject to the life-estate of the said Samuel, which is now vested in his trustees, and subject to the payment of the one-sixth of $12,000, viz. $2,000, of the debts which were due from the estate of said William McClay." If more than this sum was taken out of the estate in Dauphin county, for the payment of debts and expenses of settlement, one-sixth was to be deducted from the last of the bonds to be given for the purchase-money. The payments were to be, $300 on the execution of the deed; $500 on the 1st of Sept., 1819, and the residue in four annual payments, commencing one year after the execution of the deed, for which bonds were to be given to Harris, as trustee for Mrs. Awl. It was further agreed, that "the last bonds are not to be paid by Foster till after the whole estate of McClay shall be settled, and till it shall be fully

ascertained whether more than $12,000 are taken out of his estate in Dauphin county, for the payment of debts, &c."

Pursuant to the articles, a deed was executed Aug. 1819, conveying to Foster " one-sixth of all the real estate of which William McClay died seised, situate in Dauphin county," subject to the life-estate of S. Awl.

This action was brought on the bonds payable in 1821–22–23, on which there had been small partial payments.

In 1819, Foster was appointed one of the administrators *de bonis non* of McClay, but the administration of that estate was not finally concluded until 1838. From McClay's death until that time, there had been several sales of real estate, by order of the Orphans' Court, out of the proceeds of which his debts were paid. But the jury found that not more than $12,000 had been taken for that purpose out of the estate in the county of Dauphin.

ELDRED, P. J. instructed the jury : 1. That the purchase-money arising from the lands sold by McClay in his lifetime, did not pass to Foster under the sale by Mrs. Awl. And that this was not to be taken as making up any part of the $12,000, which was to be applied under the articles, out of the Dauphin county property, to the payment of his debts. 2. That the bonds drew interest, before the settlement of the administration accounts.

The errors assigned, were argued by

*Alricks* and *J. A. Fisher*, for plaintiff in error.—The administrators of McClay were not compellable to pass the legal title, and would then have been liable only to damages. This interest was therefore real estate of Mrs. Awl, as it would have been had it been the surplus of a sale by order of the court : 9 W. & S. 147 ; hence it passed by her sale of her real estate.

Interest is never demandable until the money is unlawfully withheld ; 13 S. & R. 205. Until the amount payable could be ascertained, the purchaser was not bound to pay either principal or interest : 4 W. 59. Here, too, the contract fixed the time for payment, viz. when it should be ascertained that not more than $12,000 was required for payment of the debts, which was, when the estate was settled. Until the death of S. Awl, and the consequent expiration of his estate, the purchaser could not get possession, and hence was not liable for interest : 2 Barr, 122.

*Fleming* and *H. Alricks*, contrà.—The sale was of the land she

then had, not of the right to the proceeds of land already sold; 11 S. & R. 233; 3 W. & S. 126; 8 Barr, 126; 5 W. 115.

The contingency on which Foster was to be entitled to a deduction never occurred, for the agreed amount never was taken for payment of debts; the delay rested with him. It is proved by the results, that he always had enough to settle the estate with, and it was his own fault that the delay occurred.

*July* 5.  COULTER, J.—The doctrine of conversion is favoured rather than restrained by modern decisions, because it carries into effect the intent and the contract of the parties, and disencumbers real estate from some of the useless clogs imposed upon its alienation by the strict rules of the common law: and it is a result and consequence of the pervading principle in chancery, that what a party has contracted to do, equity will consider as done. William McClay having sold a certain part of his real estate in his lifetime, by articles of agreement under seal, the land so contracted to be sold ceased to be real estate in his hands, although he had not parted with the legal estate. He became the trustee of that estate for the use of the vendee, and the lands were transmissible by the vendee, by contract, will, or deed. The vendor was entitled to recover the purchase-money, and was bound to make a deed; and in the event of his death before deed made, his executors or administrators were entitled to recover the purchase-money, and were bound to execute a deed, according to the mode and manner prescribed by the act of Assembly, in such cases provided. The purchase-money for the lands sold by McClay in his lifetime, went into the hands of his administrators after his death. Foster, when he purchased from Mrs. Awl, one of the sisters of McClay, her share of the lands which descended to her from William McClay and John McClay, did not buy the lots or parcels of lands which William McClay had sold in his lifetime, nor did Foster, by his purchase from Mrs. Awl and her husband, become entitled to any interest in, or part of the purchase-money of those lots, which were personal estate, and went into the hands of McClay's executor, for the purpose of paying his debts. The legal estate being held by William McClay in his life, as trustee of the vendee, it would descend to his heir, subject to the same trust. And when the vendee paid the purchase-money, he was entitled to the legal estate, and the law afforded him ample means of obtaining it, which, in due time, was procured. Foster, therefore, by virtue of his purchase of her share from Mrs. Awl and her husband, had neither

part nor interest in the lot sold by McClay in his lifetime, or their product: nor ought he to have any, for he paid no value for them. [His honour here stated the facts connected with the bonds in suit.]

Foster became one of the administrators *de bonis non* of William McClay, deceased, in December, 1819, and the final settlement of the administration account was not made until 1838.   The delay was, in a great measure, perhaps altogether, attributable to Foster himself, who, if he had chosen to do so, could have made the assets available at a much earlier period.   It appears that he became the owner of the island opposite Harrisburg, which he allowed to be sold by the sheriff.   But the bonds were due in 1821, 1822, and 1823. They were *debitum in presenti solvendum in futuro*.   The contingency in the future depended upon and was within the control of the debtor, who allowed interest to accumulate against the estate, but asks to be excused from the payment of interest himself.

He had in his hands the *quid pro quo*, the lands, for which these bonds were the *redditum*, and enjoys their great accretion in value. Why, then, should he not pay the woman, or her representatives, interest, as well as the principal, upon the happening of the contingency which made them presently payable? which contingency he might have accelerated, as administrator, to a period much earlier than that to which he allowed the matter to be protracted.

The court having distinctly and unequivocally submitted the question of fact to the jury, as to the occurrence of the contingency which would free Foster from the payment of any part of the principal of these bonds, and the jury having found that he was not compelled to pay more than $12,000 of McClay's debt out of the land in Dauphin county; or, in the other and more distinct aspect in which the matter is put in the article of agreement, that he was not compelled to pay more than $2,000 out of the share that Mrs. Awl and her husband sold to Foster, the contingency never occurred which was to entitle him to any credit on the bonds, and he was bound to pay interest on them from the time they fell due respectively, in 1821, 1822, and 1823.   The mere suspension of payment to the occurrence of an event almost altogether within the control of Foster, to wit, the settlement of his administration account, did not suspend, or rather obliterate the interest.   The law entitles the representatives of the woman, who is now dead, to recover the interest, as well as the principal.

                                             Judgment affirmed.