## Paul's Estate.

Argued December 3, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*William M. Boenning,* with him *Philip S. Moyer,* Deputy Attorney General, and *William A. Schnader,*

332

Attorney General, for the Commonwealth, appellant.—
A contract made by a decedent in his lifetime for the
sale of realty is property. It is a fact as distinguished
from the fiction of equitable conversion arising through
a will. Such contract predominates over the realty
in determining rights and liabilities of the vendor.

The predominance of the contract over the realty is
manifested by the results attending the making of the
contract: Longwell v. Bentley, 23 Pa. 99; Pipher v.
Large, 4 S. & R. 310; Richter v. Sellin, 8 S. & R. 425;
Drenkle's Est., 3 Pa. 377; Rose v. Jessup, 19 Pa. 280;
Gratz v. Ewalt, 2 Binn. 95; Baird v. Lent, 8 Watts 422;
Ives v. Cress, 5 Pa. 118; Thompson v. Adams, 55 Pa.
479; Siter's App., 26 Pa. 178; Morgan v. Scott, 26
Pa. 51.

In the existence of such contracts made by the de-
cedent, and the rights arising and resulting therefrom,
lies the distinction between the present case and those
decisions relating to conversion by will: Com. v. Hos-
pital, 287 Pa. 49; Frick v. Penna., 268 U. S. 473.

*G. Ruhland Rebmann, Jr.,* of *Edmonds, Obermayer
& Rebmann,* with him *George B. Clothier,* for appellee.
—Equitable conversion is a fiction of limited applica-
tion, powerless to alter the single taxable situs of land:
Robinson's Est., 285 Pa. 308; Croxton's Est., 288 Pa.
184; Com. v. Hospital, 287 Pa. 49; Handley's Est.,
181 Pa. 339; Vanuxem's Est., 212 Pa. 315; Bleight
v. Bank, 10 Pa. 131; Craig v. Leslie, 3 Wheaton 563;
Wentz's App., 126 Pa. 541; Foster's App., 74 Pa. 391;
Frick v. Com., 268 U. S. 473; Baldwin v. Missouri, 281
U. S. 586.

The earliest Pennsylvania cases recognize equitable
conversion by contract as an already established prin-
ciple: Carkhuff v. Anderson, 3 Binney 4; Pipher v.
Lodge, 4 S. & R. 309; Vincent v. Huff, 8 S. & R. 298

The conversion is fully operative even though, under the terms of the agreement, the vendee can elect not to complete the purchase. See Kerr v. Day, 14 Pa. 112.

Even in equity the vendor's claim for purchase money unpaid is recognized as a lien, or encumbrance, on the vendee's equitable estate: Jones v. Patterson, 12 Pa. 149.

The application of equitable conversion to give Pennsylvania jurisdiction to tax the transfer by the vendor's will of land under contract of sale and situated outside of this state would be in violation of the federal constitution: Baldwin v. Missouri, 281 U. S. 586; Farmers' L. & T. Co., v. Minnesota, 280 U. S. 204.

Equitable conversion is unnecessary to the logical adjustment of the inheritance tax situation which is raised by the death of the vendor of foreign real estate before full payment of the contract price: Com. v. Hospital, 287 Pa. 49; Farmers' L. & T. Co. v. Minnesota, 280 U. S. 204.

Opinion by Mr. Justice Schaffer, March 16, 1931:

Henry S. Paul, a resident of Pennsylvania, died seized of real estate situate in the states of New Jersey and Missouri. In his lifetime, he had entered into written contracts for its sale and had been paid various amounts on account of the purchase price. At the time of his death there remained due to him the sum of $42,387.25. He left his entire estate to collaterals, and the Commonwealth claimed a transfer inheritance tax of ten per cent on an appraised value of the contracts, which was less than the amount remaining due thereunder. The balance owing his estate was subsequently paid by the vendees under the articles of agreement, and deeds to them for the lands were made by his executrix. The court below, one of the judges thereof dissenting, decided that the Commonwealth is not entitled to the tax and it brings to us this appeal.

The question for determination is, whether the unpaid purchase money of real estate situate in other states, evidenced by articles of agreement executed by a decedent in his lifetime, is subject to a transfer inheritance tax under the Act of June 20, 1919, P. L. 521, where the vendor died seized of the lands, and deeds therefor, following payment of the entire purchase money, were not made until after his death by his personal representative.

There can be no question but that no tax could be collected on the lands as lands: Frick v. Pennsylvania, 268 U. S. 473; Robinson's Est., 285 Pa. 308; Croxton's Est., 288 Pa. 184. Is this situation altered because of the existence of the writings under which the decedent had agreed to convey the lands when the consideration therefor was paid? Is the thing sought to be taxed any the less the land, because of the writing, the vendor being still possessed of the real estate when he died?

The Commonwealth contends that the contracts of sale themselves are property, but they are, if property at all, only such because they stand for the lands. If the vendor had granted the lands in his lifetime, and had received a mortgage or a note, or other evidence of indebtedness for the part of the purchase money unpaid, the situation would be different, then the writing itself would be property, the only property growing out of the transaction which the vendor possessed, and his estate would have to respond with a tax upon it. But that is not the situation. We are asked to disregard the fact of the testator still holding title to and possession of the lands, and to indulge in the make-believe that the land had been transmuted into something else. We are not prepared to do so. The agreements of sale are not the vital factor. "They are representative and not the thing itself": Blodgett v. Silberman, 277 U. S. 1, 15; Baldwin v. Missouri, 281 U. S. 586, 593. Taxation is a practical matter: Com. v. Pennsylvania R. R. Co., 297 Pa. 308; Greene County Coal Tax Ap-

peals, 302 Pa. 179; Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204. As was said in the last named case (page 212), "Taxation is an intensely practical matter and laws in respect to it should be construed and applied with a view of avoiding as far as possible unjust and oppressive consequences." We said in Com. v. Pennsylvania Railroad Co. and in other cases that double taxation is never to be implied unless the implication is unavoidable. New Jersey and Missouri can levy a transfer inheritance tax on the lands because they are within their borders; the fact that they may not, does not alter the situation. Our rule ought to be not to subject our citizens to the possibility and danger of a double tax. If the conversion had been worked by will no tax could be levied: Robinson's Est., 285 Pa. 308; Com. v. Presbyterian Hospital, 287 Pa. 49; Croxton's Est., 288 Pa. 184. It is difficult to see wherein the difference lies between conversion by will and conversion by agreement of sale. In each instance the decedent would die seized of the land, which is the reality. Taxes should be levied upon realities, not upon fictions. Passing upon a related question to the one we are considering the Supreme Judicial Court of Massachusetts, in McCurdy v. McCurdy, 197 Mass. 248, 250, thus expressed itself, "The law of equitable conversion ought not to be invoked merely to subject property to taxation, especially when the question is one of jurisdiction between different states." Similarly the Court of Appeals of New York has given utterance to the thought in Heymann v. Viane, 252 N. Y. 159, 166, "The doctrine of equitable conversion may not be relied on to subject property to taxation or to shift the lien of the tax from the real property transferable to the fund." And in Matter of Swift, 137 N. Y. 77, 86, that court announced the sound doctrine that, "The question of the jurisdiction of the state to tax is one of fact and cannot turn upon theories or fictions; which, as it has been observed, have no place in a well adjusted system of taxation."

The whole modern tendency is to limit the levying of inheritance taxes to the sovereignty which is the situs of the actual property. This is the doctrine of Frick's Est., Farmers' Loan & Trust Co. v. Minnesota, Robinson's Est. and many other cases which could be cited. A clear illustration of the thought of the Supreme Court of the United States along this line is to be found in Safe Deposit & Trust Company of Baltimore v. Virginia, 280 U. S. 83. In that case, a citizen of Virginia transferred stocks and bonds to a Maryland Trust Company in trust for his two minor sons. The income was to be accumulated, and, as each son attained the age of twenty-five, the trustee was to pay to him one-half of the principal and accumulated income. If either died before payment, his share was to go to his children, if he left any, otherwise to the surviving son. The donor died in Virginia and the sons resided there, but the trustee held the securities in Maryland and there paid taxes on them. Administration of the donor's estate was had in Virginia, and the courts of that state sustained a tax by it upon the whole corpus of the trust. It was held by the Supreme Court of the United States, reversing the Supreme Court of Virginia, that the tax was on property beyond the jurisdiction of the state and invalid under the Fourteenth Amendment. The court laid down the proposition, that mobilia sequunter personam is a fiction intended for convenience, not controlling where justice does not demand it, and not to be applied if the result would be a patent and inescapable injustice through double taxation or otherwise. It was said (p. 94), "It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty from escaping just taxation, should compel us to accept the irrational view that the same securities [even though intangibles] were within two states at the same instant and because of this to uphold a double and oppressive assessment." We may well say in the instant case, that it would be

unfortunate, perhaps amazing, that part of the purchase money representing the value of, and arising out of lands located in other states of which a decedent died seized, may be taxed in this state, when the lands themselves may not be, under the fiction that the lands have been converted into money; or that the money, which the lands will ultimately produce, can, because a writing, be intended eventually to bring about their conveyance, may be called a chose in action, when the same money, representing part of the value of the lands may be taxed in the other states. While an agreement of sale of land, which contains a promise to pay the purchase price agreed upon, is in one sense a chose in action, it differs in essential respects from the ordinary chose. Aside from the agreement to sell, no such liability ever did exist. Its basic purpose, as a writing, is to fix the rights of the vendor and the vendee in the land; liability for the purchase price is but secondary and contingent. The fee in the land is still in the vendor, and it is the fee which is to be transferred upon payment of the balance of the purchase price. In case of default, neither the vendor, nor those standing in his shoes, are compelled to sue for that balance in order to be recompensed; they may elect to retain the land. In that event, though the written agreement is still in their possession, there would be no transfer of either land or chose in action, and hence there would be no transfer "by will or by the intestate laws" and the Act of 1919 would have no relation to the situation then existing. The uncertainty referred to is conclusive, for to doubt the existence of an intention to impose a tax, is to conclusively determine that it does not exist.

It is impossible to resist the conclusion that the situation here appearing was not contemplated by the legislature in passing the Act of 1919. It provides for taxing the estate of a decedent "whether the property is situated within the Commonwealth or elsewhere." This language echoes the then general belief that the

whole value of tangibles, wherever existing and by whatever document of title represented, furnished a basis for taxation at the domicile of the owner, and hence it was unnecessary to consider the case of an agreement of sale of such foreign tangibles, as distinguished from the value of the tangibles themselves. In Frick v. Pennsylvania, the foreign tangibles were not taxed, but their value was taken into account in determining the amount of tax to be paid as a condition of the taking of such assets located in Pennsylvania. It was wisely held that this was not permissible. That case and those which followed it, announce the better doctrine that the value of foreign tangibles cannot be considered in whole or in part, directly or indirectly, in determining the amount of tax to be paid at the domicile of the owner. Being of opinion that our statute, properly construed, does not attempt to do this, the Commonwealth's claim in the instant case must necessarily fail.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.

DISSENTING OPINION BY MR. JUSTICE MAXEY, March 16, 1931:

It has never before been questioned that Pennsylvania has the right to impose a transfer tax on the balance due on contracts for the sale of land anywhere, which contracts have been bequeathed to another by a decedent who at the time of his death was a resident of Pennsylvania. A balance due from a financially responsible debtor, as in this case, on a contract for the sale of land, is property—a solvent credit which is everywhere recognized as a subject of taxation. It is not property because it "stands for the land," as is suggested; it is property because it contractually creates and evidences certain rights of pecuniary value which the law recognizes and will enforce, to wit, the right of the vendor to demand from the vendee a sum

of money stipulated to be paid. If Paul had agreed to sell to his solvent debtor, and the latter to buy, a tract of land, say, in Florida, in 1925 for $100,000, retaining the naked title as security, and a year later that land had become worthless, Paul's property in that contract would still be worth $100,000 and would be listed as such among his assets, even though the land itself had become worthless. The contract in that case would not have "stood for," i. e., have been a substitute for, the land; the contract would derive its value from the ability of the vendee to pay. If a bank loans money and accepts a note as evidence of the debt due, the note does not stand for the property the debtor may own, any more than a municipal bond "stands for" the property a municipality may own. The note is a contract to pay the debt and is evidence of its existence, and the bank looks first to the debtor to pay it, and if he fails to do so then it looks to any property the debtor may own and on which execution may issue. When a man sells property, real or personal, on a contract, retaining the title in himself, the retained title is only a pawn. The other's debt to him is his credit and is correctly listed among his assets as property, regardless of the pawn. When a motor company sells on a contract an automobile to a customer, retaining naked title in itself, the motor company has a property in that contract. The value of the automobile may substantially decline, but the company's property in the contract remains unimpaired until the debt is paid. The contract does not "stand for" the automobile, but evidences and creates a credit in the seller which is a property distinct and apart from the automobile whose title the seller has retained merely as security. "Moneys due or owing upon articles of agreement for the sale of real estate" is expressly recognized as a subject of taxation in the Pennsylvania Revenue Act of June 7, 1879, P. L. 112, section 17, and in subsequent acts. That a balance due on a contract for the sale of land

is personal property within the letter and meaning of the Transfer Tax Act of June 20, 1919, P. L. 521, is so clear as to require no argument.

It is settled law that where a vendor sells land on a contract as the decedent did, "the vendor's interest ceases to be real estate. It becomes a chose in action, a personal demand for the consideration money, which, in case of death, goes to his personal representatives, and the legal title is held only as a security for the payment of the debt. The vendee becomes, in substance, the owner of the estate": Longwell v. Bentley, 23 Pa. 99, 102. "The unpaid purchase money [on a contract for the sale of land] was a chose in action": Krause's App., 162 Pa. 18, 25. In Robinson v. Pierce, 278 Pa. 372, 377, this court recognized the doctrine that the sale of land on a contract converts the vendor's interest in the land into personalty. There is nothing in the decision in Robinson's Estate, 285 Pa. 308, or in Commonwealth v. Presbyterian Hospital, 287 Pa. 49, or in Croxton's Est., 288 Pa. 184, that conflicts in the slightest degree with the foregoing well settled law that when an owner of land, wheresoever that land is situated, sells it on a contract, retaining the bare title as security for the purchase money, he acquires from the legally enforceable contract a right of property distinct from the land to which it relates, this right of property being intangible personalty, sometimes called "a solvent credit," sometimes called "a chose in action," whose situs for taxation and other purposes is its owner's domicile. This property is not any "make-believe" or legal fiction, but it is *an economic and legal fact.* "Wealth in a commercial age is made up largely of promises": Pound's Introduction to the Philosophy of Law, page 236. Even a government bond or a greenback is only a promise but it is clearly taxable as property. Robinson's Estate and the other cases cited simply hold that when a resident of Pennsylvania dies and at the time of his death completely owns real property

in another state, a transfer tax cannot be imposed by Pennsylvania on that extraterritorial real property, even though the land had been "by a legal fiction" equitably converted into personalty by will. The distinction between that case and the case before us is so obvious that it does not require extended discussion. In that case the property in question was the decedent's *real estate at the time of his death* and *it had its situs in another state.* It had the status of real estate at the moment of its owner's death and all inheritance rights are based on facts as they exist at the moment of a decedent's death. Though the land was directed to be sold, it might not be sold for years, but, regardless of when it was sold, the only property right the decedent had in that land or in relation to that land, at the time of his death, was the land itself. It was not a subject over which the sovereign power of Pennsylvania extended and therefore was not a legitimate object of Pennsylvania taxation. In the case before us, the vendor's interest in the extraterritorial real estate had in his lifetime been converted into a solvent credit which attached to him in Pennsylvania. The legal creator of that personal property was the contract in the vendor's possession, his interest in which contract Pennsylvania recognized as a property right. The sovereign force behind this property right was not the state where the land described in the contract was located, but the state of the domicile of the man who by that contract was endowed with certain rights of pecuniary value which his own state would enforce. This property right was as clearly taxable in Pennsylvania as it would have been if it had been based on promissory notes given by the solvent vendee for the purchase of land. The authorities are in complete harmony in holding that the interest of the decedent's fiduciary in the land contract in question is personal property subject to a tax at the state of the decedent's domicile. That state was Pennsylvania. Cooley in

the Law of Taxation, 4th edition, volume 2, page 1240, says: " 'Property,' as the term is used in a statute authorizing the imposition of taxes, will be held, without further specification, to include solvent credits. ......[Page 1242.] Credits......include......mortgages, accounts receivable,......sums owing on agreements for the purchase of land......[Page 1243.] To be taxable, however, the debt must be fixed and certain, enforceable, and liquidated in amount, although it need not be immediately payable." As FIELD, J., said in Railroad Co. v. Penna., 82 U. S. 300, 320: "Debts...... are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property and......can have no locality separate from the parties to whom they are due." Cooley in the Law of Taxation, at page 1244, says: "It has never been supposed that the clause in the Constitution of the United States which forbids the states to pass laws impairing the obligation of contracts had deprived the states of the power to tax contracts; and it has been customary for them to tax contracts for the payment of money, or having a money value, as the personal property of the owner. The right to do this, if ever in doubt, is now settled. Thus, a contract for the sale of land, or the sums owing on the contract, is taxable as the property of the vendor [citing numerous cases]. ......[Page 1247.] A contract to sell land, even where the vendor retains the title until payment in full, is taxable as a 'credit' belonging to the vendor. The balances due are taxable as credits [citing numerous cases]." This court, in Foster v. Harris, 10 Pa. 457, said that land contracted to be sold ceased to be real estate in the vendor's hands though he had not parted with the legal estate, that he became the trustee of that estate for the use of the vendee, and that after the vendor's death the purchase money went to his executors or administrators. See also Drenkle's Est., 3 Pa. 377; Rose v. Jessup, 19 Pa. 280; Leiper's App., 35 Pa. 420;

Longwell v. Bentley, 23 Pa. 99; McClure v. Fairfield, 153 Pa. 411, 417; Long's Est., 46 Pa. Superior Ct. 474, and Luckenbach's App., 162 Pa. 18.

That the vendor is only a trustee of the land sold under contract is apparent when we consider what such a contractual vendor has left which he could alienate by will or deed. All the vendor could legally sell to another in respect to the land already sold would be the contract of indebtedness, with the security therefor, but only as a security or pawn, and not the land itself. Williams v. Board of Commissioners, (Kansas) 114 Pac. 858, 860. After executing a contract with a financially responsible vendee for the purchase by the latter of a tract of land, the vendor has nothing left which he can convey or devise to another. *He merely holds title to the land as a trustee for the vendee.* This is worth nothing to the vendor except by way of security, and if the vendee is financially responsible, this security is superfluous and of no property value. In the instant case such was the fact, for all the balances due on the contracts were later paid. The title held by the vendor as security would not be listed as an asset of his estate and it has no value anywhere for taxation purposes. This economic and legal fact is recognized by states in which such contractually sold land is situated, for, as we point out later in this opinion, states like New Jersey, New York and Massachusetts do not tax such contractually sold land as the property of the vendor.

Since rights arising from land contracts are property rights distinctive from the land itself, since the rights adhering to the decedent under the land contracts in question were intangible personal property or choses in action, and since his domicile, Pennsylvania, was their situs for the purposes of taxation, how can it be held that Pennsylvania, in imposing a tax on the transfer of these choses in action adhering to the decedent at his situs here, has denied to the legatee that due process of law guaranteed by the

344

federal Constitution? As nothing in the decisions of the courts of Pennsylvania sustains such a contention, it must find its support, if any it has, in the construction put upon the Fourteenth Amendment by the Supreme Court of the United States.

We find nothing in any decision of the Supreme Court of the United States which offers the slightest impediment to Pennsylvania imposing the transfer tax in question. There is nothing in the case of Frick v. Pennsylvania, 268 U. S. 473, which prevents Pennsylvania from imposing a transfer tax in this case. In the Frick Case the Supreme Court of the United States held that Pennsylvania had no power to tax *tangible* personal property having an actual situs in Massachusetts and New York. In the case before us, Pennsylvania, instead of trying to tax *tangible* personal property in other states, is simply taxing *intangible* personal property, i. e., solvent credits, which according to long-established law are taxable at the domicile of the owner. We think that the opinion in the Frick Case makes untenable the position taken by the majority of the court in the case now before us. The Supreme Court distinctly said in the Frick Case that "intangible personalty is on a different footing from tangible personalty......The transfer of the tangible property in Massachusetts and New York occurred under and in virtue of the jurisdiction and laws of those states, and not under the jurisdiction and laws of Pennsylvania, and therefore Pennsylvania was without power to tax it." The Supreme Court also held in that case that, where the decedent Frick owned stocks in corporations in states other than Pennsylvania, which other states had subjected to a tax the stock transferred on the death of the owner, Pennsylvania, being the situs of the stock certificates, could also tax that stock, taking as the basis for assessing the stocks "such value as they had in excess of the tax" imposed by the states in which each of the corporations to which such stock related, had its situs.

Those other states, having "created the corporations issuing the stock,......had the power to impose the [transfer] tax," but this did not prevent Pennsylvania from imposing a similar tax on the stock certificates in Pennsylvania. Thus, the Supreme Court clearly indicated that there are instances of double taxation which do not conflict with the Fourteenth Amendment. But the case now before us presents no example of double taxation; and we will discuss this aspect later.

We interpret the decision of the United States Supreme Court in the case of Blodgett v. Silberman, 277 U. S. 1, decided April 16, 1928, as controlling on the question of the right of Pennsylvania to impose a transfer tax in the Paul Case. In the Silberman Case the great bulk of the estate of Silberman, the deceased, who resided in Connecticut, consisted of a large interest as general partner, appraised at $1,687,245.34, in the partnership of Openhym & Sons, doing business in New York and organized under the Limited Partnership Act of New York. The partnership assets, as the Supreme Court of the United States pointed out, consisted in part of "real estate in New York." The tax commissioners of Connecticut imposed a transfer tax on the decedent's interest in the New York partnership. The case reached the Supreme Court of Errors of Connecticut, the first question being whether the interest of the decedent in the partnership of Openhym & Sons was subject to a transfer tax in Connecticut. The Supreme Court of Errors of Connecticut held that the interest of the decedent in the partnership was a chose in action and intangible and the transfer thereof was subject to the tax imposed by the law of the decedent's domicile. The United States Supreme Court sustained this decision, and said, in the opinion by Chief Justice TAFT: "At common law the maxim 'mobilia sequunter personam' applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common

law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evidencing the same are found in the state of the domicile or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction." The Supreme Court further said: "It is very plain......that the interest of the decedent in the partnership......was subject to the transfer tax of Connecticut." The Supreme Court decided another question in that case which we refer to because a phrase used in discussing it is quoted as sustaining the majority opinion in this case. That phrase is "They [referring to certain bonds] are representative and not the thing itself." The Supreme Court of Errors of Connecticut had held that bonds and certificates which belonged to the decedent and which were actually in New York City were not within the taxable jurisdiction of Connecticut but were to be regarded in the same class of tangibles as were works of art in the Frick Case. Chief Justice TAFT said: "The argument is that such bonds payable to bearer and transferable from hand to hand have lost their character as choses in action and have taken on the qualities of physical property,......The Supreme Court of Errors [of Connecticut] takes this view, citing Frick v. Pa., and holds that the transfer of the United States bonds and certificates is taxable only in New York, where they are......We think bonds are not thus distinguishable from other choses in action......Bonds......are......in their essence only evidences of debt......They are representative and not the thing itself." The Supreme Court then decided that though these evidences of debt were actually in New York, the transfer of the credit which they represented was taxable as intangible personal property in the State of Connecticut where the owner had resided. Applying this reasoning to the Paul Case, the land contracts were

only evidence of debt, the thing subject to the Pennsylvania transfer tax was the credit arising from those contracts and adhering to the decedent, Paul. If these evidences of debt (land contracts) had been in New York, as were the evidences of debt (bonds) in the Silberman Case, New York could not have taxed them but Pennsylvania could, for they represented solvent credits of a deceased Pennsylvanian. The United States Supreme Court pointed out in the Silberman Case that "the line which was drawn in the case of Frick v. Pennsylvania was......that the power of taxation could not extend to tangible chattels having an actual situs outside the jurisdiction, although the owner was within it......This is not true of debts and choses in action which usually have a taxable situs at the owner's domicile." The language quoted definitely supports the proposition that the choses in action arising from the Paul land contracts had a taxable situs at the owner's domicile, Pennsylvania. The case of Safe Deposit & Trust Co. of Baltimore v. Virginia, 280 U. S. 83, cited in the majority opinion, neither in its decision nor opinion negatives the right of Pennsylvania to impose a transfer tax in the Paul Case. In that case Kellam, a resident of Virginia, transferred to the Safe Deposit & Trust Co. of Baltimore $50,000 worth of stocks and bonds, upon a certain trust for his minor sons, with power to change the investments. The United States Supreme Court held that the property was wholly beyond Virginia's jurisdiction, saying: "Manifestly, the securities are subject to taxation in Maryland where they are in the actual possession of the Trust Company, holder of the legal title;......nobody within Virginia has present right to their control or possession, or to receive income therefrom, or cause them to be brought physically within her borders......Ordinarily this court recognizes that the fiction of mobilia sequuntur personam may be applied in order to determine the situs of intangible personal property for taxation.

Blodgett v. Silberman, 277 U. S. 1. But the general rule must yield to established fact of legal ownership, actual presence and control "elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise......Here, where the possessor of the legal title holds the securities in Maryland, thus giving them a permanent situs for lawful taxation there, and no person in Virginia has present right to their enjoyment or power to remove them, the fiction must be disregarded. It plainly conflicts with fact; the securities did not and could not follow any person domiciled in Virginia." Applying these principles to the Paul Case, we have the securities (the land contracts) in the possession of a resident of Pennsylvania. If Paul had before his death assigned these securities to the Safe Deposit & Trust Co. of Baltimore in trust for certain beneficiaries, and he had given up all power and control over these securities, and if nobody in Pennsylvania had any present right to their control or possession, or to receive income therefrom, or to cause them to be brought physically within her borders, Pennsylvania could not tax the rights of property evidenced by these contracts. The Supreme Court said: "We must decide whether intangibles—stocks, bonds—in the hands of the holder of the legal title with definite taxable situs at its residence, not subject to change by the equitable owner, may be taxed at the latter's domicile in another state. We think not." The court added: "They have acquired a situs separate from that of the beneficial owners." In that case the Supreme Court did not overrule Blodgett v. United States, but expressly cited it, saying: "In Blodgett v. Silberman, 277 U. S. 1, the decedent had control and present right to all benefits arising from the property. The legal title was not held by another with the duty to retain possession, as in the present case." Paraphrasing this language, we may say, in the case now before us, the de-

cedent, Paul, a resident of Pennsylvania, had control and present right to all benefits arising from the property, i. e., the land contracts. The legal title was not held by another with the duty to retain possession. The concurring opinion of Mr. Justice Stone in the Safe Deposit and Trust Co. Case, also illuminates the problem presented in the present case. He said: "I concur in the result. It is enough to support it that, as stipulated in the record, the Virginia assessment was levied against a trustee domiciled in Maryland upon securities held by it in trust in its exclusive possession and control there, and so is forbidden as an attempt to tax property without the jurisdiction." He also said: "It may be that Virginia, following its own view of the nature of vested and contingent interests, might tax the interests of these beneficiaries as though they were the whole, but it is sufficient for present purposes that it has not assumed to do so." We might paraphrase this language and say that in the case before us it may be that New Jersey and Missouri might tax Paul's naked title to lands in those states, which naked title only possesses nominal value, but it is sufficient for present purposes that neither of these states have assumed to do so. Justice Stone adds: "I should not be prepared to go so far as to say that the equitable rights in personam of the beneficiaries of the trust might not have been taxed at the place of their domicile quite as much as a debt secured by a mortgage on land in another jurisdiction, notwithstanding the fact that the land is also taxed at its situs...... In neither case, if the threat of double taxation were controlling, which under the decisions it is not,......would it seem that in any real sense is there double taxation, since the legal interests protected and taxed by the two taxing jurisdictions are different."

In the instant case, even if Missouri and New Jersey had levied an inheritance tax on Paul's property right in the naked title to lands in those states that would not be double taxation, as the legal interest taxed by New

Jersey and Missouri on the one hand and Pennsylvania on the other are totally different, as we point out later in this opinion. Mr. Justice HOLMES in his dissenting opinion in the Safe Deposit and Trust Case (supra), said: "I do not think that it matters that the owners, residing in Virginia, have only an equitable title. To be sure the trustee having the legal title and possession of the bonds in Maryland may be taxed there. But that does not affect the right of Virginia by reason of anything that I know of in the Constitution of the United States."

Farmers Loan & Trust Co. v. Minnesota, 280 U. S. 204, reëmphasizes the principle that evidences of debt possessed by a decedent are taxable in the state of his domicile and not in the state that issued the bonds or where the property, i. e., the security for the bonds, is located. Minnesota bonds owned by a New York decedent were held not taxable in Minnesota but taxable in New York. Baldwin v. Missouri, 281 Pa. 586, reaffirmed the same principle. Illinois was permitted to tax an Illinois decedent's personal intangible property though this property was evidenced in large part by promissory notes physically within Missouri, were executed by citizens of Missouri and secured by loans upon Missouri lands. The court said: "The situs of the credit was Illinois...... There the property interest in the credit passed under [the Baldwin] will...... This passing was properly taxable at that place and not otherwise. The bonds and notes, although physically within Missouri, under our former opinions were choses in action with situs at the domicile of the creditor." In Citizens Nat. Bank v. Durr, 257 U. S. 99, the Supreme Court held that "it was too plain for discussion" that a membership in the New York Stock Exchange held by a resident of Ohio was taxable in Ohio as a valuable property right, intangible in its nature. The court overruled a contention that membership in the exchange was so inseparately connected with specific real estate in New

York that its taxable situs must be regarded as not in Ohio. In the case of Beidler's Executor v. South Carolina Tax Commissioners, decided by the United States Supreme Court, November 24, 1930, it was held that an indebtedness due from a South Carolina corporation to a resident of Illinois cannot be taxed by the former state, "that the transfer of the credit from the deceased former owner to his legal representative can be taxed only by the state of the domicile of the deceased owner." If New Jersey and Missouri taxed the Paul Estate property rights in the naked title to land retained by Paul in those states (which in fact they did not) and if Pennsylvania taxed the estate's property right in the unpaid balances in the land contracts, this would not be such double taxation as would offend the Fourteenth Amendment. A piece of property may owe such a dual economic allegiance to two different sovereignties as to be properly taxable in both. This court has upheld the validity of double taxation even in the same state. It held in Provident Life & Trust Co. v. McCaughn, 245 Pa. 370, 382, that "double taxation......within proper limitations, is not unknown to our law or beyond the power of the legislature to impose." Justice STONE, in his concurring opinion in Farmers Loan & Trust Co. v. Minnesota, supra, said: "Hitherto the fact that taxation is 'double' has not been deemed to affect its constitutionality, and there are, I think, too many situations in which a single economic interest may have such legal relationships with different taxing jurisdictions as to justify its taxation in both, to admit of our laying down any constitutional principle broadly prohibiting taxation merely because it is double, at least until that characterization is more precisely defined." Paul at the time of his death owed an economic allegiance both to states in which he held naked title to land and to the state (Pa.) in which he held contracts for its sale and the aid of whose courts he might invoke for their enforcement. It is only in comparatively modern times

that citizens or subjects of one state have been permitted to have economic interests in another. Privileges enjoyed must often be paid for. Since the legatee under the will of the Pennsylvania resident acquired a naked title to property in New Jersey and Missouri by virtue of the laws of those sovereign states, she would be making only a just payment to those states for rights of property secured her by them if she should pay transfer inheritance taxes on the fair value of the nominal property rights she inherited in those states. But as the successor in Pennsylvania to the Pennsylvania testator's rights under contracts for the sale of extraterritorial lands, she acquired by inheritance also a much more valuable property right by virtue of the laws of Pennsylvania for which Pennsylvania is justified in demanding compensation. Not only did she acquire by inheritance a naked title to lands in New Jersey and Missouri, but those lands were in process of liquidation by virtue of contracts which the sovereign State of Pennsylvania recognized and which her courts were ready to enforce. "Legal protection and taxation are reciprocal" said this court in Com. v. American Dredging Co., 122 Pa. 386, 391. If a citizen's economic activities extend from the domicile of his own state into another state, thereby possibly resulting in somewhat greater total excise contributions than if he had confined these activities to his own state, he has no more cause to complain of unjust or "double" taxation resulting therefrom than has a person who pays dues in two clubs he has joined, though his total food consumption and social activities in both clubs are no greater than they would be if he belonged to only one. In fact, there is no double taxation even attempted in this case. Neither New Jersey nor Missouri has levied a transfer tax upon any land in those states which decedent contracted to sell, and under their laws none can be levied. The comptroller of the treasury of the State of New Jersey informed us under date of December 24, 1930, that "the

rule is well established in this state [New Jersey] that a contract for the sale of real estate works an equitable conversion of the land into personalty at the instant of signing the contract." He cited Miller v. Miller, 25 N. J. Eq. 354; Stockfleth v. Britten, 105 N. J. Eq. 3. The comptroller says further: "Applying the rules of these decisions,......the State of New Jersey would make no attempt to tax the transfer of resident real property of a nonresident decedent, where such property was under contract of sale entered into by said nonresident prior to his death." The law and practice of Missouri appear to be the same. The law and practice of New York State are the same. Swift's Est., 137 N. Y. 77, cited in the majority opinion, is a case like Robinson's Est., 285 Pa. 308. It does not touch on the question which we have in the present case, i. e., where land is actually sold on a contract before decedent's death. In such a case the law of New York is exactly as this dissenting opinion contends it should be declared to be in Pennsylvania. In re Boshart's Est., 177 N. Y. Supp. 574, it was held that the interest of a nonresident vendor in a land contract covering land in the State of New York is not subject to a transfer tax in New York on the death of the vendor, its situs being in the state of decedent's residence, and it being "intangible property." In re Russell's Est., 194 N. Y. Supp. 837, held likewise. No cases like these have gone to the New York Court of Appeals. Therefore, these two decisions by the appellate division declare the law of New York on this subject. The law in Massachusetts is the same. The commissioner of corporations and taxation of Massachusetts advises us by letter dated December 23, 1930, that if a resident of Massachusetts dies holding title to land in another state, land he had sold on a contract but the title to which he was holding until the contract had been completely complied with, the money coming from the contract of sale into the hands of the fiduciary, i. e., the balance of the purchase money, would be taxed as having

a situs in Massachusetts. McCurdy v. McCurdy, 197 Mass. 248, cited in the majority opinion, does not relate to the question involved in the instant case. It simply held that where a nonresident of Massachusetts owned land in Massachusetts, which land was subject to a lien in favor of a Massachusetts creditor, that the value of the testator's interest in that land at the time of his death was only the value of the equity of redemption. The Massachusetts law in regard to the question in the present case is exactly the same as this dissenting opinion contends it should be declared to be in Pennsylvania.

My conclusion is that all species of tangible or intangible property having a situs in Pennsylvania are legitimate subjects of taxation by Pennsylvania; that solvent credits in possession of a decedent at the time of his death and arising from the contractual sale of land in other states, are clearly among the legitimate subjects of taxation; that to tax such credits does not result in "double taxation"; that if it did it would constitute no injustice to the taxpayer, as the taxpayer owed an economic allegiance not only to Pennsylvania, but also to Missouri and New Jersey. Seligman, in his Essays on Taxation, 10th edition, page 113, says: "There is, however, one final principle, toward which all modern governments are tending...... This is the principle of economic interest or economic allegiance, as against the antiquated doctrine of political allegiance. Every man may be taxed by competing authorities according to his economic interests under each authority."

For the courts of Pennsylvania to construe the Act of June 20, 1919, P. L. 521, in such a way as to exempt credits possessed by Pennsylvania decedents and resulting from the sale of land in other states, from the operation of that act, would constitute not only an act of legislation but an act of unwise legislation. Such legislation would deny our own State tax gatherers access to legitimate and fertile fields of needed revenue.

If it should be held that Pennsylvania cannot levy an inheritance tax on the unpaid balance which was due the decedent in the case before us, at the time of his death, in the future we may expect that residents of Pennsylvania who deal in real estate and who own lands in other states, will sell these lands on land contracts instead of conveying them and taking mortgages, because by this practice, to which the door will have been judicially opened, they will save themselves millions of dollars in taxation, at the expense of the public treasury of Pennsylvania.

If the delusive cry of "double taxation" moves this court to interpose between the Commonwealth of Pennsylvania and the intangible personalty she is now justly seeking to tax, the same specious cry can with equal plausibility be raised when this Commonwealth is about to tax other forms of local intangible personalty which have economic relationships with land or corporations in other states or countries.

In my opinion, the restrictive decision of the court below has neither federal nor state constitutional justification.

DISSENTING OPINION BY MR. CHIEF JUSTICE FRAZER:

As to the right of the Commonwealth to exact the inheritance tax here sought to be collected, I concur in the conclusion reached by Mr. Justice MAXEY in his dissenting opinion. The tax imposed by the Act of June 20, 1919, P. L. 521, falls upon inheritance of personal property owned by a resident of Pennsylvania at the time of his death. The transfer of land upon articles of agreement to sell and purchase, entered into by vendor and vendee, creates an executory contract (Driesbach v. Serfass, 126 Pa. 32, 40) under which the vendor holds the legal title merely as trustee for purchaser and purchaser holds the purchase money solely as trustee for vendor: 39 Cyc. 1303, and cases in note 20. This binding agreement to convey land for money converts vendor's bene-

ficial or equitable interest into personalty: Robinson v. Pierce, 278 Pa. 372, 376. In substance, vendor's equitable title to the money contracted to be paid is his real or beneficial interest, and in contemplation of law is superior, under the binding terms of the contract, to his legal title to the land, held simply as security for payment by the purchaser: 39 Cyc. 1303-4. The equitable title of vendor in the money and of vendee in the land, vest at the time the contract is executed: Siter's App., 26 Pa. 178, 180. The situs of the personalty here in question for taxation purposes is the owner's domicile: Blodgett v. Silberman, 277 U. S. 1, 8-9. Decedent's domicile in the present case is Pennsylvania, and the rule of taxation applicable is as stated in 37 Cyc. 1564, citing numerous Pennsylvania authorities: "As to tangible personal property and choses in action, the general rule is mobilia sequuntur personam, and they are taxable at the place of the owner's domicile." I find nothing in the record to take this case out of the general rule and in my opinion the cases cited in the majority opinion do not apply here, as the facts in each case are different from those now before us. Beginning with the Act of June 17, 1879, P. L. 112, and continuing through all subsequent revenue legislation, the Commonwealth has expressly recognized the applicability of this rule by a provision in all its revenue acts subjecting to taxation for state purposes, as personal property, all articles of agreement for the sale of land without mention of its location, whether within or without the State. Although no such express provision appears in the Transfer Act of 1919, I find nothing in its terms tending to exempt intangible personal property such as was owned by decedent in the present case, from its application under the general rules of taxation law and statutory construction as above stated.

I would reverse the court below and enter judgment for the Commonwealth.