## Hufnagel Estate

*John M. Haverty, Jr.,* for Commonwealth.

*Edmund K. Trent,* for appellant.

BOYLE, P. J., August 19, 1969.—The case before the court involves an appeal from a transfer inheritance tax assessment.

The question presented is whether the Pennsylvania real property of a nonresident decedent, under agreement of sale at the date of her death, is subject to Pennsylvania transfer inheritance tax under the provisions of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, sec. 212.

Decedent died July 6, 1967, a resident of Buenos Aires, Argentina. By her last will dated April 13, 1967, decedent gave all her estate to her three children, one-fifth to John R. Hufnagel, two-fifths to Babette

Hufnagel de White, and two-fifths to Luis F. E. Hufnagel, Jr.

The following facts have been stipulated to by the parties:

Prior to April 28, 1967, decedent was seized of an undivided one-seventh interest in real property situate at 221-23 Fifth Avenue, City of Pittsburgh, Pa. By agreement dated and delivered April 28, 1967, decedent, together with the other owners of said realty, contracted to sell the same to Nellie Grasnier on or before July 1, 1967, or sooner upon 30 days' written notice by the buyer.

On June 26, 1967, decedent caused to be executed by her attorney in fact, duly appointed in writing, a deed dated May 20, 1967, conveying her interest in the real estate, together with the interests of the other owners, to Nellie Gasnier.

On June 28, 1967, the parties agreed to hold the closing on July 7, 1967, at the office of the Union Title Guaranty Company, 210 Grant Street, Pittsburgh, Pa.

Decedent died the day before the closing. Letters testamentary were issued to Edmund K. Trent, the appellant, on July 10, 1967. He duly carried out the agreement of sale on July 11, 1967.

On November 6, 1968, petitioner-appellant filed with the Department of Revenue, Commonwealth of Pennsylvania, a transfer inheritance tax return for decedent, listing in Schedule B (as personal property wherever situate), decedent's claim against the buyer for the purchase price of said realty at the net amount, after expenses, of $25,702.27. On November 25, 1968, the Secretary of Revenue assessed a transfer inheritance tax on decedent's one-seventh interest in said realty, valuing it at the gross purchase price, $25,714.28, and computed the tax thereon at the two percent rate or $514.29.

Petitioner appealed, asking that the assessment be stricken on the ground that decedent owned an interest in intangible personal property at the time of her death which would not be taxable to her estate because she died a nonresident of Pennsylvania.

The Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, sec. 212, 72 PS §2485-212, imposes a tax on all transfers of property, as defined in the act, by will of a nonresident.

Section 102(17)(iv) of the act, 72 PS §2485-102(iv) defines "property" of a nonresident as follows:

"All real property and all tangible personal property of a nonresident decedent . . . having its situs in Pennsylvania. . . ."

The act exempts the intangible personal property of a nonresident decedent from inheritance tax. The Inheritance and Estate Tax Act of June 15, 1961, supra, sec. 306, 72 PS §2485-306 provides:

"Intangible personal property held by, for, or for the benefit of a decedent who, at the time of his death was a nonresident, is exempt from inheritance tax."

Appellant contends that decedent's interest in real estate at 221-23 Fifth Avenue was converted into intangible personal property by the agreement of sale of April 28, 1967. At her death, it is argued, decedent owned no interest in real property subjecting her estate to inheritance taxation; it is contended that her contractual right to receive the purchase money was all that was transferred by her will and that such contractual right was exempt under section 306 of the act.

The Pennsylvania Inheritance and Estate Tax Act of June 15, 1961, recognizes that an equitable conversion may take place in one situation. In section 102(17)(iii), 72 PS §2485-102(17)(iii), it defines property subject to tax as "real property and all tangible personal property having its situs outside the Com-

monwealth owned by a resident decedent, which the decedent has contracted to sell, provided the jurisdiction in which the property has its situs does not subject it to death tax."

The Joint State Government Commission's Comment under section 102(17)(iii) states:

"This changes existing case law: Paul's Estate, 303 Pa. 330. It is not intended to cause the taxation of such property where the will merely directs a sale . . ."

The former, now overruled, law of Paul's Estate, supra, was that Pennsylvania could not tax a contract of a deceased resident to sell real estate lying in another State. The Supreme Court held at pages 334 and 335:

"The question for determination is, whether the unpaid purchase money of real estate situate in other states, evidenced by articles of agreement executed by a decedent in his lifetime, is subject to a transfer inheritance tax under the Act of June 20, 1919, P.L. 521, where the vendor died seized of the lands, and deeds therefor, following payment of the entire purchase money, were not made until after his death by his personal representative.

"There can be no question but that no tax could be collected on the lands as lands: Frick v. Pennsylvania, 268 U.S. 473; Robinson's Estate, 285 Pa. 308; Croxton's Estate, 288 Pa. 184. Is this situation altered because of the existence of the writings under which the decedent had agreed to convey the lands when the consideration therefor was paid? Is the thing sought to be taxed any the less the land, because of the writing, the vendor being still possessed of the real estate when he died?

"The Commonwealth contends that the contracts of sale themselves are property, but they are, if property at all, only such because they stand for the lands.

If the vendor had granted the lands in his lifetime, and had received a mortgage or a note, or other evidence of indebtedness for the part of the purchase money unpaid, the situation would be different, then the writing itself would be property, the only property growing out of the transaction which the vendor possessed, and his estate would have to respond with a tax upon it. But that is not the situation. We are asked to disregard the fact of the testator still holding title to and possession of the lands, and to indulge in the make-believe that the land had been transmuted into something else. We are not prepared to do so. The agreements of sale are not the vital factor. 'They are representative and not the thing itself': Blodgett v. Silberman, 277 U.S. 1, 15; Baldwin v. Missouri, 281 U.S. 586, 593. Taxation is a practical matter: Com. v. Pennsylvania R. R. Co., 297 Pa. 308; Greene County Coal Tax Appeals, 302 Pa. 179; Farmers' Loan & Trust Co. v. Minnesota, 280 U.S. 204."

Paul's Estate, supra, is the reverse of the situation now before the court. The statute clearly repeals its (Paul's Estate) effect by permitting a contract of sale to be taxed by Pennsylvania but only in the situation where no double taxation would result.

The issue in the case at bar is whether the Inheritance and Estate Tax Act of June 15, 1961 now permits an equitable conversion to effect an exemption from tax where a nonresident decedent dies owning Pennsylvania real estate subject to an agreement of sale.

Under the Transfer Inheritance Tax Act of June 20, 1919, P.L. 521, 72 PS §2301, et seq., now repealed, it was held that where "tangible property belonging to a decedent's estate is located within this Commonwealth, an inheritance tax may be charged upon its transfer . . . no matter where decedent was domi-

ciled at the time of his death": Commonwealth v. Presbyterian Hospital, 287 Pa. 49, 54. In that case decedent was domiciled in South Carolina and her Pennsylvania real estate, it was argued, had been equitably converted by her will into personal property. The court conceded the doctrine of equitable conversion with respect to persons who might receive the proceeds, the heirs (realty) or personal representative (personalty) if a beneficiary were dead. The court indicated that the issue as to the taxability of the property was a different matter. To avoid the double taxation forbidden by Frick v. Pennsylvania, 268 U.S. 473, the court disregarded the equitable conversion of the real property and held (pages 51-52) that Pennsylvania could impose the tax. Implicit in the case is the fact decedent's domicile could not tax the converted realty as personalty.

In Grossman and Smith, Pennsylvania Inheritance and Estate Tax (1961), the authors state at pages 60, 61 and 62:

"Finally Com. v. Presby. Hospital decided that Pennsylvania realty was liable to the tax imposed by the Act of 1919, P.L. 521, irrespective of any equitable conversion of the property by will. This decision came in the wake of Frick v. Pa., 268 U.S. 473 (1925) and the Court indicated that consistency required the result reached. The Court had taken a similar approach with regard to Robinson Est., 285 Pa. 308 (1926).[3] In

---

[3] "The court in Robinson Estate felt bound by Frick v. Pa., 268 U.S. 473 (1925), for although Frick dealt with tangible personal property, the same 'single tax' rule was deemed applicable to intangible personalty such as the converted realty. However, as noted in the discussion at 1961 §102(17)(iii) and §102(17)(iv)-3.1, supra, the 'single tax' theory no longer applies strictly to intangible personal property."

addition the Court noted that such a result would foster simplicity, certainty, and uniformity and minimize the expense of collection because fewer contingencies would affect the question of the right to collect the taxes. See discussion at 1961 §102(17)(iii), supra.

"The 1961 Act is silent as to equitable conversion in the case of a nonresident's Pennsylvania realty bound by a contract to sell, and the issue thus becomes whether Paul Estate has overruled the earlier decisions, or whether those earlier decisions survive under 1961 §102(17)(iv) as part of the definition of 'real property.' Paul Estate can certainly be interpreted as a forceful repudiation of the doctrine of equitable conversion in tax matters, applicable to all estates even though the problem of a resident decedent's realty located outside Pennsylvania was the only problem there before the court. If this be the true interpretation, then all aspects of the rule of equitable conversion for tax purposes have vanished from the tax law dealing with the definition of 'real property,' and the rule is not revived in the 1961 Act in respect to nonresidents owning Pennsylvania realty. Such realty would remain taxable even though under agreement of sale at the nonresident's death, for equitable conversion is revived only in 1961 §102(17)(iii), which is not applicable to nonresidents.

"However, Paul Estate involved only the attempt to subject a resident's out of state realty to Pennsylvania tax; whether the court's language can be taken to condemn the exemption from tax of a nonresident's Pennsylvania realty is perhaps another matter altogether. Interestingly, the court in Paul Estate cites Blodgett v. Silberman, 277 U.S. 1 (1928), for the proposition that 'the agreements of sale are not the vital factor. "They are representative and not the thing

itself " ': 303 Pa. at p. 334. The Blodgett case was similar to Arbuckle Estate, and determined that a Connecticut decedent's interest in a New York partnership was taxable only in Connecticut, for the partnership agreement converted the New York realty into a chose in action having a Connecticut situs. Thus, Paul Estate may well stand for the proposition that equitable conversion was wholly repudiated where it resulted in the imposition of tax on realty outside Pennsylvania, but was still the law to insulate Pennsylvania realty owned by nonresidents from tax in appropriate cases. If this be true, presumably 'real property' in 1961 §102(17)(iv) means only real property not converted under the rules of the case law in regard to nonresidents, which case law was not altered by Paul Estate.

"It would seem self-evident that the rule intended to be embodied in 1961 §102(17) was that real estate remained real estate, regardless of testamentary powers of sale or agreements of sale not ripening into conveyances before death, and that equitable conversion is a part of the 1961 law only in the limited situation described in 1961 §102(17)(iii). There is no indication that 'real property' as used in 1961 §102-(17)(i) means anything different from the same term as used in 1961 §102(17)(iv), and the implication to be derived from the very existence of 1961 §102(17)-(iii) is that the legislature believed that, absent that provision, equitable conversion was completely ineffective under the Act. Since 1961 §102(17)(iii) revives the doctrine only for residents owning realty outside Pennsylvania, and only in certain specific situations there described, the application of the doctrine, in any of its aspects, to Pennsylvania realty owned by nonresidents, would be equivalent to a determination that the term 'real property' had wholly different meanings in 1961 §§102(17)(i) and (iv),

meaning realty without regard to equitable conversion when used in 1961 §102(17)(i) [hence the need for 1961 §102(17)(iii)] and realty only after the doctrine had been applied when used in 1961 §102(17)(iv).

"Therefore, it would appear to be the law under the 1961 Act that a nonresident's Pennsylvania realty remains taxable in Pennsylvania despite the existence of facts giving rise to equitable conversion for non-tax purposes."

As before stated, section 102(17)(iv) of the Act of June 15, 1961 taxes all real property of a nonresident decedent having its situs in Pennsylvania. The comment to this subsection states:

"This is suggested by Act of 1919, P.L. 521, §1(b) as amended."

No exception is made of real estate subject to a contract of sale.

Section 306 of the Act of June 15, 1961, P. L. 373, 72 PS §2485-306, exempts from taxation the intangible personal property of nonresident decedents. No mention is made in this section of real estate in Pennsylvania subject to an agreement of sale.

The Statutory Construction Act of May 28, 1937, P.L. 1019, Art. IV, sec. 58, 46 PS §558, provides that all provisions of a law exempting property from taxation are to be strictly construed. See Hermann Estate, 349 Pa. 230, 233, and Tack's Estate, 325 Pa. 545, 553.

The legislature has not expressed an intention in the Inheritance and Estate Tax Act of June 15, 1961 to exempt from taxation real property situate in Pennsylvania which is owned by a nonresident at the date of her death and which is subject to an agreement of sale which is carried out by her personal representative after her death.

The appeal from the assessment of transfer inheritance tax in this case will be dismissed.